**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**


**EARL WESLEY BERRY**                                             **PETITIONER**

**v.**                                                    **NO.: 1:04CV328-D-D**

**CHRISTOPHER EPPS, ET AL.**                                    **RESPONDENTS**


<u>**MEMORANDUM OPINION**</u>

Petitioner Earl Wesley Berry filed this federal habeas corpus action pursuant to Title 28 U.S.C. § 2254 seeking to attack his otherwise final state capital murder conviction and sentence of death.

<u>**Facts of the Case**</u>

Mary Bounds was reported missing by her daughter, Gena Watson, around midnight on Sunday, November 29, 1987. On Tuesday, December 1, 1987, Mrs. Bounds' vehicle was located near the First Baptist Church in Houston, Mississippi, and an inspection of the car led to the discovery of blood splattered around the driver's side door. Earrings belonging to Mrs. Bounds were discovered near the car. On Wednesday, December 2, 1987, Cecil Woodard, Jr., informed law enforcement authorities he had found a pair of women's shoes lying by the side of the road that he thought might be related to the missing woman, and family members subsequently identified the shoes as having belonged to Mrs. Bounds. Mr. Woodard showed authorities where he found the shoes, and Mrs. Bounds' body was discovered nearby. The body bore wounds consistent with a beating, and it was later determined Mrs. Bounds died of head injuries consistent with blows.

On Saturday, December 5, 1987, James Berry, brother to the Petitioner, Earl Berry, informed authorities that Petitioner had arrived at their grandmother's home around 10:00 p.m. on Sunday, November 29, 1987, and while there burned some clothes and wiped-out the inside of the car he had been driving that evening. At trial, James Berry testified that upon arriving at the grandmother's home, Petitioner had burned the pants and shirt he had been wearing and had soaked his jacket and coat in a bucket of cold water in the bathroom. James Berry testified he gave a statement to Investigator Bill Gore on December 6, 1987, that he had remembered seeing blood on Petitioner's pants the evening of Sunday, November 29, 1987.

Based on the information provided to Investigator Gore, a warrant was obtained and authorities went to the home of Petitioner's grandmother, where Petitioner complied with a request to come outside and talk to authorities. Following questioning about his activities on the day of and days following the murder, a search was conducted and Petitioner was arrested.

Petitioner later gave an incriminating statement, the substance of which is as follows. On the afternoon of November 29, 1987, Petitioner had gotten drunk and friends left him at an apartment in Houston, Mississippi, to sleep-off the effects of the alcohol. Around 7:00 p.m. that night, Petitioner left the apartment and drove through Houston, where he approached Mary Bounds near the church she attended. Petitioner hit her and forced her into his vehicle. Driving away from town and into a wooded area, Petitioner took Mrs. Bounds into the words and ordered her to lie down, intent on raping her. For reasons that are unclear, Petitioner did not rape Mary Bounds, but instead took her back to the car and proceeded to drive to another wooded area where they got out of the car. Mary Bounds begged, "[p]lease," and Petitioner beat her with his fist and forearm before forcing her again into the woods, where he left her. Petitioner then drove to his grandmother's house, disposing of a pair of mismatched

tennis shoes along the way. Once at his grandmother's home, he burned the clothes he was wearing and cleaned blood from the car with a towel he later threw into a pond near the house.

As a result of information learned during Petitioner's recitation of events, police searched the pond and recovered a blue pajama top and dish towel. Petitioner later assisted police in locating the mismatched tennis shoes.

Early Wesley Berry was indicted by a Chickasaw County grand jury for the murder and kidnaping of Mary Bounds and as an habitual criminal on March 1, 1988. Following a bifurcated jury trial, Petitioner was found guilty of capital murder and sentenced to death by order entered on October 28, 1988. Petitioner appealed the judgment, sentence, and denial of post-trial motions to the Mississippi Supreme Court. The court found no errors as to the guilt portion of the trial and affirmed the conviction, but the death sentence was vacated and remanded for a new sentencing, as the court found the jury instruction with regard to the "especially heinous, atrocious or cruel" aggravating circumstances failed to appropriately channel the discretion of the jury.[1]

Petitioner's re-sentencing trial began on June 22, 1992, following the trial judge's order of a venue change from Chickasaw County to Union County due to extensive publicity about the case. On June 25, 1992, the jury returned a sentence of death. Petitioner's motion for a new trial and judgment notwithstanding the verdict were denied by the trial court on December 21, 1992. Petitioner appealed the

---

[1] *Berry v. State*, 575 So.2d 1, 14 (Miss. 1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991) (*Berry I*). The Mississippi Supreme Court determined the instruction lacked the limiting instruction mandated in *Coleman v. State*, 378 So.2d 640 (Miss. 1979). In *Coleman*, the court determined that the limiting instruction must distinguish capital felonies deserving of a death sentence, such as "the conscienceless or pitiless crime which is unnecessarily torturous to the victim," from the "norm" of capital felonies. *Id.* at 648 (*quoting Spinkellink v. Wainwright*, 578 F.2d 582, 611 (5th Cir. 1978)).

second death sentence to the Mississippi Supreme Court, citing eighteen separate errors. In the second portion of a two-part opinion, the court held that a *Batson* hearing was required to consider the trial court's determination that a *Batson* test was inapplicable to the prosecution's striking of all African-American jury members in a case involving a Caucasian defendant.[2]

Circuit Judge Kenneth Coleman held a *Batson* hearing on January 16, 1998. On January 28, 1998, the court entered its order, which found Petitioner had failed to establish a prima facie case of purposeful discrimination. The court also found that the strikes made by the prosecution were race-neutral. Petitioner appealed the trial court's decision of the *Batson* question to the Mississippi Supreme Court, which affirmed the trial court's ruling.[3]

On December 20, 2002, an initial application for state post-conviction relief was filed, to which an amendment was later filed, citing twelve errors. The court denied the application by opinion issued July 1, 2004, with rehearing denied, September 30, 2004.[4]

On October 18, 2004, Earl Wesley Berry filed a motion with this Court to have counsel appointed in this cause. This Court entered an order appointing counsel and setting a deadline of May 3, 2005, for Petitioner to file his petition for a writ of habeas corpus, which was timely filed and later amended on October 16, 2005. Petitioner raises the following claims in his petition:

I. **PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES**

---

[2] *Berry v. State*, 703 So.2d 269 (Miss. 1997) (*Berry II*).

[3] *Berry v. State*, 802 So.2d 1033 (Miss. 2001), *cert. denied*, 537 U.S. 828, 123 S.Ct. 125, 154 L.Ed.2d 42 (2002) (*Berry III*).

[4] *Berry v. State*, 882 So.2d 157 (Miss. 2004), *cert. denied*, 544 U.S. 950, 125 S.Ct. 1694, 161 L.Ed.2d 528, 73 USLW 3569 (2005) (*Berry IV*).

CONSTITUTION WHERE THE TRIAL COURT IMPROPERLY ADMITTED PETITIONER'S STATEMENTS AT TRIAL.

II.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE TRIAL COURT IMPROPERLY DENIED A MOTION FOR CHANGE OF VENUE.

III.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF WITNESSES.

IV.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE ADMISSION OF UNRELIABLE AND IRRELEVANT EVIDENCE VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL.

V.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AT THE PRE-TRIAL AND TRIAL PROCEEDINGS AND ON APPEAL.

VI.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE TRIAL COURT ERRED IN FINDING THAT THE STATE HAD PROFFERED RACIALLY NEUTRAL REASONS FOR EXERCISING PEREMPTORY CHALLENGES AGAINST POTENTIAL JURORS.

VII.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AT HIS RE-SENTENCING HEARING WHERE THE DEATH SENTENCE WAS BASED ON ARBITRARY FACTORS.

VIII.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AT HIS RE-SENTENCING HEARING WHERE THE PROSECUTOR ENGAGED IN A PATTERN OF MISCONDUCT.

IX.  **PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AT HIS RE-SENTENCING HEARING WHERE THE ADMISSION OF UNRELIABLE AND IRRELEVANT EVIDENCE VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL.**

X.  **PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE IT IS UNLAWFUL TO EXECUTE A PERSON WHO IS MENTALLY ILL.**

XI.  **PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE PETITIONER HAS BEEN SUBJECTED TO THE "DEATH-ROW PHENOMENON" AND THE EXECUTION OF PETITIONER IN THIS CASE SERVES NO LEGITIMATE PENOLOGICAL END.**

XII.  **PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE CUMULATIVE EFFECT OF THE CONSTITUTIONAL VIOLATIONS SET FORTH IN CLAIMS I THROUGH XI HEREIN.**

**Authorities (AEDPA and Constitutional Standards)**

Petitioner filed his federal habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); therefore, the AEDPA governs this Court's review of his claims.  *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).  Title 28 U.S.C. § 2254(a) allows a district court to consider a petitioner's application for writ of habeas corpus based on a claim that the petitioner is, as a result of a state court judgment, "in custody in violation of the Constitution or laws or treaties of the United States." The standard of review set forth in the AEDPA prohibits a petitioner's relitigation of issues that were adjudicated on the merits in state proceedings unless that adjudication either "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ( 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed. 2d 289 (2000); 28 U.S.C. § 2254(d)(1) and (2). A state court's factual findings carry a presumption of correctness on federal habeas review, and a petitioner wishing to challenge state court fact-finding must rebut the presumption by clear and convincing evidence. *See Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (holding state court fact findings are presumed correct and the petitioner has the burden of rebutting the presumption by clear and convincing evidence); *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997), *cert. denied*, 525 U.S. 859 (1998) (recognizing that under the AEDPA, state court factual findings "shall be presumed correct unless rebutted by 'clear and convincing evidence'").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. *See Bell v. Cone*, 535 U.S.685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 404-05, 120 S.Ct. at 1519. A federal court may grant habeas relief under the "contrary to" clause if (1) the state court's conclusion on a question of law is opposite that reached by the Supreme Court, or (2) the state court decides a case differently than the United States Supreme Court has on facts that are materially indistinguishable. *See Mitchell v. Esparaza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003); *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850; *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 404-06, 120 S.Ct. at 1518-19. Under the "unreasonable application" clause, a federal court may grant habeas relief if the State court identifies the applicable legal principle from decisions of the Supreme Court but unreasonably applies the principle to the facts at issue. *See Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, L.Ed.2d 471 (2003);

*Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam); *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850; *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 407-08, 120 S.Ct. at 1520-21. The "unreasonable application" inquiry requires a federal court to question whether the State court's application of Supreme Court precedent was "objectively unreasonable," which requires more than a showing that the decision was merely incorrect. *See Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner."); *Woodford*, 537 U.S. at 25, 123 S.Ct. at 360; *Penry*, 532 U.S. at 793, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 409-11, 120 S.Ct. at 1522; *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850. Moreover, it is the ultimate decision or conclusion reached by the state court that is reviewed, and not the quality of the opinion. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (question before federal habeas court is whether ultimate conclusion of state court was objectively reasonable); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding § 2254(d) authorizes federal court to review  state court's decision only and not explanation of decision), *cert denied*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

The AEDPA imposes the burden of obtaining an evidentiary hearing in federal court on the petitioner, and it also limits the circumstances in which an evidentiary hearing may be granted for those petitioners who fail to diligently seek to establish the factual bases for their claims in state court. *See Williams*, 529 U.S. at 433-34, 120 S.Ct. at 1489 (prisoners at fault for deficiency in state court record must satisfy heightened standard to obtain evidentiary hearing); *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000); *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); 28 U.S.C. § 2254(e)(2).  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams*, 529 U.S. at 437,

120 S.Ct. at 1491.

With the foregoing principles in mind, the Court turns to the merits of Petitioner's claims for federal habeas corpus relief.

### Timing of the Petition

Petitioner filed his petition for writ of habeas corpus with this Court on May 3, 2005.[5] The following day, Petitioner filed a motion to allow an extension of time so that an amended petition might be filed. Petitioner's request was sustained, and following an extension of time in which to file, Petitioner filed his amended petition on October 16, 2005. Respondents filed their "Answer to Amended Petition for Writ of Habeas Corpus and Incorporated Memorandum of Law" (hereinafter "Answer") on January 15, 2006.

In his amended petition, Petitioner asserts the Mississippi "post-conviction review process was ineffective to protect the rights of death sentenced inmates in the State of Mississippi" with regard to several specific claims and in a general conclusion, such that any procedural bar asserted against Petitioner either in direct appeal or in state post-conviction proceedings should not prevent federal habeas review of these claims.[6] Petitioner purports to provide support for his argument by directing this Court to "See 'Reply to Respondent's Overall Assertions That Grounds C, D, and E of the Petition for Writ of Habeas Corpus Are Unexhausted and Procedurally Defaulted,' filed in *Grayson v. Epps*, 1:04CV708-B, Southern

---

[5] Petitioner filed a motion to have counsel appointed and a motion to proceed *in forma pauperis* on October 18, 2004. [Docket entry nos. 1 & 2]. His motions were granted by order of this Court [Docket entry nos.3 & 4] on October 25, 2004, which allowed Petitioner until May 3, 2005, to file the instant petition.

[6] Petitioner alleges the actions of the Mississippi courts, legislature, and prosecutors were improper, thereby causing a constructive absence of State process under 28 U.S.C. § 2254(b)(1)(B)(i) and/or an ineffective process in these particular circumstances under 28 U.S.C. § 2254(b)(1)(B)(ii).

District of Mississippi, Southern Division; attached hereto as Exhibit A)" (hereinafter "*Grayson* Memo").[7]

Respondents assert this Court is precluded from considering this claim in the amended petition, as the amended petition was filed more than one year after Petitioner's case became final on direct appeal, and the claims differ in "time and type" from those set forth in the original petition.[8]  Petitioner responds that he is not adding new substantive claims, but is merely asserting an argument against a procedural ground, such that the limitations period is not implicated.

Petitioner repeatedly directs the Court to the *Grayson* Memo in a blanket manner, offering no argument in support thereof, without citing any portion of it in the body of the petition or supporting memorandum, and without offering any explanation of how it is relevant to his case.[9]  Petitioner's argument is conclusory and without requisite specificity or relevance to this petition.  Whether this is a "claim" barred by the statute of limitations is irrelevant, as under the standards set forth by the AEDPA, the matter is waived.  *See Salazar-Regino v. Trominski*, 415 F.3d 436, 452 (5th Cir. 2005) (petitioners waived issue by failing to adequately brief it, where their argument consisted of case citation without explanation as to how  case was applicable to instant facts, and where opinion had been overruled);

---

[7] Petitioner cites to the *Grayson* Memo on pages 40, 59-60, 68-69, 99-100, 124, and 133 of his petition.

[8] Citing *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), Respondents argue this claim is not properly before the Court as it violates the one-year limitation rule of 28 Title U.S.C. § 2244(d)(1).  Respondents assert that the statute of limitations began to run on October 7, 2002, when Petitioner's case was denied on direct appeal. Respondents assert that when the post-conviction relief application was filed on December 20, 2002, Petitioner had used 74 of his 365 days in which to file.  The Mississippi Supreme Court denied rehearing on September 30, 2004, and the instant petition was filed on May 3, 2005, for a total of 289 days used. Respondents argue, therefore, that an amended petition had to be filed by July 18, 2005, in order to be timely. (Answer 36-37).

[9] It should be noted that Petitioner failed to attach the *Grayson* Memo as an exhibit to his petition in this Court.

*Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002);*Trevino v. Johnson*, 168 F.3d 173, 181 n.3 (5th Cir. 1999) (inadequately briefed issues are waived); *Royal v. Tombone*, 141 F.3d 596, 599 n.3 (5th Cir. 1998); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993) (request to adopt previous factual and legal arguments pled in state court in federal habeas denied and effectively abandoned by petitioner's failure to argue them in his brief). Therefore, this argument is waived and will not be substantively addressed further in the Court's consideration of Petitioner's claims.

## Claim I. Invalid Confession

Following his arrest, Petitioner gave a statement to Investigator Bill Gore and Investigator Jimmy Edwards confessing to the murder of Mary Bounds. Petitioner's counsel filed a pre-trial motion seeking to suppress the statement, and a hearing was had on the issue on October 18 and 19, 1988. Investigator Gore, Webster County Sheriff Middleton, Investigator Edwards, and Petitioner all testified at the hearing, at the conclusion of which the trial court determined the statement was voluntarily given and all constitutional requirements were met, rendering the statement admissible. (Trial Tr. vol. 3, 128, No. 89-DP-199, October 19, 1988).

At the pre-trial suppression hearing, Investigator Gore testified Sheriff Middleton advised Petitioner of his *Miranda* rights prior to Petitioner's arrest and before the initial questioning at the home of Petitioner's grandmother on December 6, 1987. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (Trial Tr. vol. 3, 69-70). Gore testified that Sheriff Middleton gave Petitioner an opportunity to deny killing Mrs. Bounds and pointedly asked Petitioner if he did in fact kill her, to which Petitioner responded, "I won't say I didn't. I'll just say I don't remember." (Trial Tr. vol. 3, 72). Petitioner was arrested and logged in at the jailhouse around 9:40 a.m. the same day. Gore testified to the

series of events following Petitioner's arrest as follows. Later on December 6, 1987, between 4:30 p.m. and 5:00 p.m., Gore and Edwards went to Petitioner's cell to talk to him, and Petitioner stated he might talk to them if he could make a telephone call to Jim Waide, an attorney who had previously represented him. (Trial Tr. vol. 3, 74). Petitioner was told he would be able to use the telephone after he had finished dinner, which was being served at the time. (Trial Tr. vol. 3, 74). Petitioner was brought into the office to use the telephone and refused his opportunity to call an attorney, whereupon Gore asked "[w]ell, are you still willing to talk to us?" (Trial Tr. vol. 3, 75). After Petitioner responded that he would talk to the investigators, Gore asked Petitioner whether law enforcement needed to continue pumping the pond for evidence. (Trial Tr. vol. 3, 75). Petitioner informed Gore there was no evidence in the pond. (Trial Tr. vol. 3, 75). After Gore left Petitioner to radio his officers to stop pumping the pond, he went back into the room with Investigator Edwards and Petitioner, whereupon Gore went over Petitioner's *Miranda* rights again. (Trial Tr. vol. 3, 75). Petitioner began to give his statement without being questioned, and he gave a step-by-step account of the crime, with Gore asking clarifying questions. (Trial Tr. vol. 3, 76-77). The statement was read aloud by Gore, with Petitioner reading along, and it was signed by Petitioner and witnessed by Gore and Edwards after two additions were made at Petitioner's request. (Trial Tr. vol. 3, 79-82). Gore testified he was surprised when Petitioner agreed to talk, particularly after he had initially requested to telephone an attorney. (Trial Tr. vol. 3, 121).

Petitioner's testimony at the suppression hearing differed from Gore's. Petitioner testified he requested an attorney upon initial questioning at his grandmother's home on the morning of December 6, 1987, after Sheriff Middleton told him "you know you don't have to talk. You know you can have a lawyer." (Trial Tr. vol. 3, 90). Petitioner's testimony was that he requested to speak to an attorney at that time, and that he requested to speak to an attorney numerous times while being held in his cell, prior to

12

being given the opportunity to make a telephone call. (Trial Tr. vol. 3, 91). Petitioner testified he attempted to call his attorney twice, but he could not contact him as it was a Sunday. (Trial Tr. vol. 3, 91). Petitioner admitted he voluntarily said he did the things in the statement and that the statement was read to him prior to his signing it. (Trial Tr. vol. 3, 93). Petitioner admitted making additions to the statement but denied *Miranda* rights were given by Middleton or Gore (Trial Tr. vol. 3, 97, 98) or that he did not choose to call an attorney. (Trial Tr. vol. 3, 93).

Webster County Sheriff, Bill Middleton, testified he advised Petitioner of his constitutional rights when Petitioner came out of his grandmother's home to speak to the law enforcement officers. (Trial Tr. vol. 3, 103). Middleton testified he inquired whether Berry wanted to deny killing the victim, to which Berry responded, "[n]o, I can't tell you that." (Trial Tr. vol. 3, 104).

James Edwards, an investigator for the Mississippi Highway Patrol, testified he was present in the Sheriff's office at the Chickasaw County Jail when Petitioner stated he did not want to call an attorney. (Trial Tr. vol. 3, 110-111). Edwards testified Gore advised Petitioner of his *Miranda* rights after Petitioner indicated he would talk to them, and that the rights were orally given in an accurate manner. (Trial Tr. vol. 3, 112).

Following arguments, the trial court determined the constitutional requirements to the statement's admissibility were met and denied the motion to suppress the statement.

At trial, Petitioner's statement was introduced through the testimony of Investigator Gore and read to the jury. (Trial Tr. vol. 5, 430, October 25, 1988). Regarding the refused telephone call, Gore testified he asked Petitioner who he wished to call. Gore testified Petitioner replied, "a lawyer, but it's not my right to a lawyer. . . .[I]t's just a fellow that said I could always call him if I ever needed help." (Trial Tr. vol. 5, 426). The substance of Gore's testimony was the same as at the suppression hearing, with the exception of

13

the above-referenced statement Petitioner takes issue with in the instant petition. Gore testified the process of taking the statement probably took an hour to an hour and a half, and that he did not have Petitioner sign a written form waiving his *Miranda* rights out of fear Berry would not agree to talk to him. (Trial Tr. vol. 5, 459). Gore testified Petitioner indicated he understood his right to an attorney, as Petitioner stated he would talk to them if he could make a telephone call to his lawyer. (Trial Tr. vol. 5, 460).

At re-sentencing, Gore again testified. Defense counsel renewed his objection to the introduction of the statement, and the objection was overruled. (Re-Sentencing Trial Tr. vol. 6, 387-88, No. 93-DP-59, June 23, 1992).

The Mississippi Supreme Court affirmed the trial court's finding that the statement was voluntarily made and further held that if the right to counsel had been invoked, Petitioner had "knowingly and intelligently" waived it. *Berry I*, 575 So.2d at 6. The court determined the waiver was effective when Petitioner declined to call an attorney and resolutely stated he did not wish to call in response to Investigator Gore's inquiry. *Id*. at 8. The claim was brought before the court again on direct appeal of the re-sentencing, where it was determined to be procedurally barred. *Berry II*, 703 So.2d at 290-91. The court addressed the merits of the claim without waiving the bar and determined no error existed in the determination that all of the constitutional prerequisites to admissibility had been established. *Id*.[10]

In his habeas petition, Petitioner argues he repeatedly and unambiguously requested to speak to an attorney, invoking his Fifth Amendment rights, that those rights were denied by law enforcement officials, and that his subsequent statements to law enforcement officials were allowed into evidence in error.

---

[10] Petitioner argued on post-conviction review that the re-sentencing court denied him the opportunity to challenge the admissibility of his confession, and the Mississippi Supreme Court determined Petitioner was not entitled to argue "residual doubt" as to evidence deemed admissible at the guilt phase. *Berry IV*, 882 So.2d 157, 167-68 (2004). Petitioner does not argue this point in his petition for federal habeas review.

Petitioner alleges the absence of a written waiver is evidence of the denial of his constitutionally protected rights, and that his decision to refrain from calling an attorney was insufficient to reinitiate conversations with police. In addition, Petitioner claims his Sixth Amendment rights were implicated, as well, as he was arrested pursuant to an arrest warrant. Petitioner argues he made a non-ambiguous request sufficient to invoke his rights, and that this argument is supported by Investigator Gore's testimony, which established Petitioner asked to call an attorney. Petitioner also asserts there was no probable cause for the warrant, and that counsel was ineffective for not renewing a suppression motion in light of Investigator Gore's "self-contradictory" statement at trial. (Pet. ¶¶ 215-255).

Once a suspect has clearly expressed his wish to have counsel present in dealings with authorities, all interrogation must cease unless the suspect makes a "knowing and intelligent" waiver of his right to counsel. *See Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492-93, 83 L.Ed.2d 488, 493 (1984); *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981); *see also Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, L.Ed.2d 694 (1966) Inquiries regarding the admissibility of a confession following a waiver of request for counsel requires consideration of two questions. First, whether the right to counsel was actually invoked; and second, whether the court has determined the suspect's responses admissible as the discussion between law enforcement and the suspect was (a) initiated by the suspect, and (b) a knowing and intelligent waiver of his right to the assistance of counsel. *Smith*, 469 U.S. at 95, 105 S.Ct. at 493.

In the case at bar, Petitioner refused to call an attorney after law enforcement officials attempted to satisfy his request. The Court of Appeals for the Fifth Circuit has determined that the rule set forth in *Edwards*, that once a right to counsel is invoked no further questioning may occur unless the suspect initiates the conversation, is not violated if there is no overreaching or interference by police. *See Griffin v.*

*Lynaugh*, 823 F.2d 856, 864 (5th Cir. 1987). In the case at bar, there is record evidence from two law

enforcement investigators that Petitioner was given his *Miranda* rights at the time of his arrest.

Investigators Gore and Edwards each testified Petitioner declined to call an attorney, and that Petitioner

stated, in response to a clarifying question, that he would talk to them. Gore's inquiry regarding whether

Petitioner intended to talk to police after refusing to call an attorney was asked to clarify if Petitioner

intended to waive his right to counsel. Further, Petitioner was given his *Miranda* rights again prior to

questioning about the crime. It was not unreasonable for the Mississippi Supreme Court to determine

Petitioner had made a knowing and intelligent waiver of his right to counsel.

With regard to Petitioner's claim that his Sixth Amendment right to counsel was violated, the

giving of *Miranda* warnings and subsequent waiver of the right to counsel meets the burden of making

Petitioner aware of his right and the  possible consequences of forgoing that right, thereby making the

waiver sufficiently knowing and intelligent.  *See Patterson v. Illinois*, 487 U.S. 285, 292-93, 108 S.Ct.

2389, 2395, 101 L.Ed.2d 261 (1988). While the Mississippi Supreme Court did not specifically mention

the Sixth Amendment right to counsel in its decision, the claim was presented to them, and the court

determined each fact that was a prerequisite to the confession's admissibility was established.  *Berry I*, 575

So.2d at 8.   The Court finds the Mississippi Supreme Court did not reach a decision contrary to, or

involving an unreasonable application of, clearly established Supreme Court precedent, nor was it

unreasonable in its determination of facts with regard to Petitioner's claim.  Petitioner is entitled to no relief

on this issue.

### Claim II.  Denial of Motion to Change Venue

Prior to trial, Petitioner's defense counsel moved the trial court for a change of venue based on

published newspaper reports of the crime and the prominence of the victim in the county.  (Trial Tr. vol. 2,

47-49, No. 89-DP-0199, May 12, 1988). The trial court held a hearing regarding defense counsel's motions for change of venue and county-wide venire on September 2, 1988. (Trial Tr. vol. 3, 131-173, No. 89-DP-0199, September 2, 1988). Petitioner raised a presumption that he could not obtain a fair trial in the county by filing with the motion affidavits stating knowledge of Petitioner's arrest and the facts of the crime, to which the State responded by calling eleven community witnesses to testify to rebut the presumption. (Trial Tr. vol. 3, 131-173). Each of the State's witnesses opined that Petitioner could receive a fair trial in Chickasaw County, Mississippi. (Trial Tr. vol. 3, 134, 139, 144, 150, 153-54, 158, 161, 164, 167, 169-70, 172).

At hearing on the motion, three witnesses were presented by the defense. The first, Kenny Hobbensell, was a local resident and publisher of the local newspaper, the *Times Post*. (Trial Tr. vol. 3, 175). Mr. Hobbensell testified he had written an article about the murder and an article about the arrest, and he also testified about the contents of the arrest article, which identified Earl Wesley Berry as the person arrested in connection with the murder. (Trial Tr. vol. 3, 176). The *Times Post* had a weekly circulation of 8,600 copies and served all of Chickasaw County, a population Hobbensell estimated to be between eighteen and twenty thousand persons. (Trial Tr. vol. 3, 176). Hobbensell opined that approximately seventy percent of his circulation was within Chickasaw County. (Trial Tr. vol. 3, 178). In addition to the article previously mentioned, another article was published when Petitioner's attorney was appointed. (Trial Tr. vol. 3, 178-79). Hobbensell testified on cross-examination that no pictures of Petitioner were published in the *Times Post* regarding the incident, and no series was done on the victim, her family, or the progress of the trial. (Trial Tr. vol. 3, 179-80). He further opined Petitioner could receive a fair trial in the county, as he did not think publicity had saturated the community. (Trial Tr. vol. 3, 181).

The second witness produced by the defense to testify at the hearing was Lester Treadwill, who testified he had heard people in the community talking about the case and did not believe Petitioner would receive a fair trial in Chickasaw County. (Trial Tr. vol. 3, 182). On cross-examination, it was elicited that Treadwill was related by marriage to Petitioner. (Trial Tr. vol. 3, 185-86). Finally, the defense produced Leonard Aubrey Gann, who opined Petitioner could not receive a fair trial in Chickasaw County, and who testified that his son was married to Petitioner's sister. (Trial Tr. vol. 3, 188).

In argument on the motion, defense counsel assured the trial court that he had "talked to everybody from the Pawn Broker to the librarian in an attempt to discover what the popular sentiment here is." (Trial. Tr. vol. 3, line 29 of 189 and line 1 of 190). The trial court noted the thoroughness of defense counsel's efforts to contact persons willing to testify to an inflamed community atmosphere and denied the motion, as no evidence was presented to warrant a change of venue. (Trial Tr. vol. 3, 195). The trial court then considered the motion for a county-wide venire, pursuant to Miss. Code Ann. § 13-5-21. The trial court found the statute allowed a county-wide venire at the court's discretion in certain situations, such as when a jury venire was exhausted in one judicial district. (Trial Tr. vol. 3, 197-98). The court did not find such to be the case with regard to Petitioner and denied the motion. (Trial Tr. vol. 3, 199). On direct appeal, the Mississippi Supreme Court found no abuse of discretion in the trial judge's denial of the motion to change venue or in the denial of Petitioner's motion for a county-wide venire. *Berry I*, 575 So.2d at 8-9.

In his habeas petition, Petitioner argues that due to the community atmosphere, he was deprived of his right to a fair and impartial jury by the trial court's denial of a change of venue motion. Petitioner asserts that the community interest generated a lot of talk about this crime, and newspaper articles were disseminated concerning Petitioner and the case. The crux of Petitioner's argument is that extraneous

information influenced the jury's verdict and the jurors' claims of impartiality should not be believed.[11]

Petitioner references twenty-six instances where a panel member specifically mentioned hearing about the case. (Pet. ¶¶ 259-284). Included in Petitioner's claim is that the trial court erred in failing to individually voir dire the jury panel, and that the failure of the court to select the venire county-wide was in error. It appears as though Petitioner's argument is that the failure of the trial court to grant the county-wide venire following the denial of the change of venue forced the jury to be selected from an insufficient pool, and the failure of the court to allow individual voir dire further prejudiced Petitioner's chances of receiving an impartial jury.

Respondents assert that there were only three newspaper articles reporting and/or discussing the crime, and they were all published eleven months prior to the trial. (Answer 99). Additionally, Respondents point out that only one individual named in the petition, Margaret Pulliam, Juror No. 22, was actually seated in the trial, and she was affirmatively accepted by Petitioner. (Answer 100).

An accused has the right to a fair and impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). However, it is well-settled that a jury does not have to be wholly ignorant of the facts of a case to be seated and render a verdict. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). In this case, Petitioner fails to make a claim that any juror seated in this case was impartial. Of the jurors cited by Petitioner, only Juror No. 22, Margaret Pulliam, actually served on the jury.[12] Widespread community knowledge of a crime, without more, does not render proceedings against a

---

[11] Petitioner cites and *Mu'Min v. Virginia*, 500 U.S. 415, 111 S.Ct. 1899 (1991)*; Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 2888 (1984); and *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 2036 (1975) for his proposition that claims of impartiality by jurors should not be believed when there is a dissemination of adverse pre-trial publicity.

[12] Petitioner affirmatively accepted Juror Pulliam during the exercise of peremptory strikes. (Trial Tr. vol. 4, 362, No. 89-DP-199, October 3, 1988). At the conclusion of jury

defendant constitutionally unfair.  *See Dobbert v. Florida*, 432 U.S. 282, 301-03, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).  The publicity at issue here - three articles published almost one year prior to trial - distinguish this case from those relied on by Petitioner.  Petitioner has not demonstrated pretrial publicity was inflammatory, much less "literally saturated the community in which the trial was held."  *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981).  Moreover, the Supreme Court has held that peremptory strikes are a means by which an impartial jury is seated, and the Sixth Amendment is not offended when a peremptory challenge is used to achieve that end.  *See Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).  When there is no showing of an inflamed community atmosphere, there must be a showing of juror bias in order to successfully challenge the denial of the motion for change of venue, and Petitioner has failed to so persuade.  *See Busby v. Dretke*, 359 F.3d 708, 725-26, (5th Cir. 2004), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004).  The Mississippi Supreme Court was not unreasonable in its determination that there was no abuse of discretion in the trial court's denial of the motion for change of venue.

The Court further finds Petitioner is not entitled to relief on his claim that it was error for the trial judge to deny a county-wide venire or to allow individual voir dire of the panel members.  The decision of the trial judge to deny a county-wide venire is a matter of state law and not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (holding federal habeas review limited to deciding whether a conviction violated Constitution, laws, or treaties of United States and not for state law errors); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111

---

selection, Petitioner had taken 11 strikes.  Respondents argue he had a remaining challenge he could have chosen to use to excuse Juror Pulliam from jury service and cannot now raise a challenge to a juror he accepted.

L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984).

Petitioner's assertion that the trial court erred in failing to individually question venire members is a bare

assertion with no legal or factual support and is insufficient to form a basis for relief.[13]

With regard to Petitioner's second claim of error, the Court finds the Mississippi Supreme Court did

not reach a decision contrary to, or involving an unreasonable application of, clearly established Supreme

Court precedent, nor was it unreasonable in its determination of facts with regard to Petitioner's claim.

Petitioner is entitled to no relief on this claim.

### Claim III.  Prosecutorial Vouching for Credibility of Witnesses

Petitioner asserts the prosecutor's repeated references to the honesty of two state witnesses during

closing argument put the credibility of the government behind their testimony and implied to the jury there

was information not presented to them, such that the trial was infected with unfairness.  (Pet. ¶¶ 303-323).

Citing the Mississippi Supreme Court decision as unreasonable, Petitioner argues the jury was encouraged

to draw the conclusion that Petitioner had not exercised his rights and the confession was valid, as the

officers were honest.[14]   The argument at issue is as follows:

> May I submit to you that he is guilty.  Now why is he guilty, I want to go over some
> of these facts.  Why is he guilty.  Officer Billy Gore, an eighteen year veteran with the
> Mississippi Highway Patrol, he did some hard work on this case.  He worked on it day and

---

[13] Petitioner's argument consists of the following:
> 297.  It is easy to see when reviewing the record that when one venire member
> started answering in a certain manner, other members followed suit.
> 298.  The trial court erred in not questioning prospective jurors individually. (Pet.
68,  ¶¶ 297-98).

[14] Included in Petitioner's argument is that Investigator Gore added to the testimony he
had given at the suppression hearing when he testified in front of the jury, which was considered
in the first claim of error.  As it was without merit there, so is it here and is omitted from the
discussion.

night.  It's obvious from the testimony of the witness, 12:50 in the morning, they get a call from Gena.  Come back over the next morning, all during the hours of the night, he worked hard, and before it was over with, he had obtained a legal confession from this man.  A legal confession taken by an honest highway patrolman, an honest man, Billy Gore, eighteen years with the highway patrol, talk about honesty.  I submit to you that he was, and he is, because he is a veteran, and because he stays there, and he's proved himself.

Now you believe an honest highway patrolman, he is much more reliable than just some stranger seeing something....This is an honest man, an honest cop, doing a good job, an honest highway patrolman.  Another honest deputy sheriff, Jimmy Myers, told you on direct examination about finding all those items down there...Mr. Gore worked on it [the case], he kept working on it.  (Pet. ¶ 304, citing Trial Tr. vol. 6, 665-66, No. 89-DP-199, October 27, 1988).

The Mississippi Supreme Court found this matter barred on direct appeal for defense counsel's failure to object during the argument. *Berry I*, 575 So.2d at 9.  The court alternatively held there was no improper argument and, if there were, cautionary instructions cured those that were improper. *Id.*  The court noted the "broad latitude" given in closing arguments, and additionally noted the "remarks complained of related to an issue raised by the defense on cross-examination of Officer Gore and the direct examination of Berry." *Id.*  The trial court was not asked by counsel to admonish the jury regarding the comments, and cautionary instructions were given to the jury instructing them that the testimony of the officer was entitled to no special weight.[15] *Id.*

This claim is not cognizable on federal habeas review, as the decision of the Mississippi Supreme Court rests upon a procedural bar, providing a clearly expressed independent and adequate state law ground for its decision. *See Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Y1st v.*

---

[15] The trial court gave Jury Instruction D-2, which reads, in part, "[p]eople employed by the government, including law enforcement officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight."  (Trial Tr. vol. 2, 114, No. 89-DP-199).

The court also gave Instruction C.01, which reads, in part,  "[a]rguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence.  Any argument, statement, or remark having no basis in the evidence should be disregarded by you."  (Trial Tr. vol. 2, 106).

*Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Stokes v. Anderson*, 123 F.3d

858, 860-61 (5th Cir. 1997), *cert. denied*, 522 U.S. 1134, 118 S.Ct. 1091, 140 L.Ed.2d 147 (1998) (finding

Mississippi's contemporaneous objection requirement an independent and adequate procedural bar).

Petitioner does not attempt to demonstrate cause and prejudice to overcome the procedural bar.  *See, e.g.,*

*Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.  Petitioner has alleged no facts which would indicate a

fundamental miscarriage of justice would result if the claim were not considered.  *See Coleman*, 501 U.S. at

750, 111 S.Ct. at 2565; *see also Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) ("fundamental

miscarriage of justice" claims limited to those of actual innocence).   Moreover, the procedural bar is not

vitiated by the Mississippi Supreme Court alternatively addressing the merits of the claim.  *See, e.g., Harris*

*v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (a "plain statement" that claim is

barred with alternative explanation of merits does not vitiate imposition of bar).

To the extent the Mississippi Supreme Court's alternative analysis could be considered a waiver of

the procedural bar, this Court finds the alternative merits sufficient to warrant a denial of relief on this

issue.   Defense counsel stated in closing argument that Petitioner's confession was "a prosecution

manufactured statement by a police officer who badly wanted to solve this crime."  (Trial Tr. vol. 6, 676,

lines 4-5, No. 89-DP-199, October 27, 1988). *See Darden v. Wainwright*, 477 U.S. 168, 181-83, 106 S.Ct.

2464, 2471-72, 91 L.Ed.2d 144 (1986) (whether comments of prosecutor were "invited response" by

defense counsel's own argument relevant in examination of entire trial to determine if petitioner denied due

process by comments).  In light of the instructions given to the jury and defense counsel's own closing

argument, it cannot be said Petitioner was denied a fundamentally fair trial by the statements of the

prosecutor.  The Court finds the Mississippi Supreme Court did not reach a decision contrary to, or

involving an unreasonable application of, clearly established Supreme Court precedent, nor was it

unreasonable in its determination of facts with regard to Petitioner's claim. Petitioner is entitled to no relief on this claim.

## Claim IV. Unreliable and Irrelevant Evidence[16]

At Petitioner's trial, eleven photographs of the victim's body and five slides of same were introduced and admitted into evidence through the testimonies of Investigator Bill Gore and Pathologist Dr. Ricky Hicks over the objection of defense counsel that the photographs and corresponding slides were irrelevant, prejudicial, inflammatory, and lacking in probative value. (Trial Tr. vol. 5, 416, 535, 539, 541, 545, 548, 551, No. 89-DP-199, October 26, 1988). Three photographs depicting the victim's body as found were introduced through the testimony of Investigator Gore. (Trial Tr. vol. 5, 416, Ex. 6, 7, & 8). Four photographs of footprints were also introduced through Gore's testimony. (Trial Tr. vol. 5, 417-19, Ex. 9 & 10 (footprints) and 11 & 12 (footprint indentations found by side of road)). The photographs of the footprint indentations were allowed into evidence over defense counsel's objection, but the trial judge sustained that portion of the objection which speculated as to what made the indentations.[17] A plaster cast of footprints found at the crime scene was also introduced and admitted into evidence through the testimony of Gore following a bench conference to address defense counsel's objections regarding the cast. (Trial Tr. vol. 5, 438-443, Ex. 24). Defense counsel objected to the introduction of the cast, as the lab report indicated there were not sufficient points of similarity to make a positive identification that the shoes

---

[16] The Court notes that it has been unable to locate the photographs or copies of the photographs complained of in this assignment of error. The exhibits were purportedly sent to the Union County Circuit Clerk following the denial of Petitioner's state post-conviction application, but they have not been located, and Petitioner's counsel has failed to produce copies of the photographs for the Court's review.

[17] The trial judge sustained defense counsel's objection to the portion of Gore's testimony regarding the origin of the indentations, as Investigator Gore was not qualified as an expert to give an opinion on the subject. (Trial Tr. vol. 5, 418-19).

in evidence made the indentations. (Trial Tr. vol. 5, 439). After allowing the State to lay a foundation for the admissibility of the cast, the trial court found the cast should be allowed into evidence for the jury's consideration, not as scientific evidence, but as evidence found at the scene. (Trial Tr. vol. 5, 442). The court also issued a subpoena for crime laboratory employee Frank McCann, who could testify as to the lack of sufficient points of similarity for identification purposes. (Trial Tr. vol. 5, 442). On cross-examination, defense counsel elicited from Gore that his testimony was not that the cast was made from the shoes introduced at trial. (Trial Tr. vol. 5, 465).

Deborah Haller, a forensic toxicologist with the Mississippi Crime Lab, testified that the shoe impressions were insufficient in detail to positively identify them as made by the shoes in evidence. (Trial Tr. vol. 5, 527-28). On re-direct, Haller was asked by the prosecutor whether a lay person could draw his or her own conclusions by looking at the photographs and cast, and the trial judge sustained defense counsel's objection as the question called for a legal opinion. (Trial Tr. vol. 5, 529). The question was rephrased to ask whether "visual examination" could be made. (Trial Tr. vol. 5, 530). Defense counsel made no objection to the question, and the witness answered affirmatively. (Trial Tr. vol. 5, 530).

A stipulation was entered in the jury's presence that Frank McCann with the Mississippi Crime Laboratory conducted tests and found "that the markings in four of the slides were not made by the shoes [in evidence]. It was his further findings that the markings in all 13 of the slides, including those on the victim and the plaster cast contained insufficient detail to make a positive identification." (Trial Tr. vol. 6, 649, lines 12-17, No. 89-DP-199, October 27, 1988). In closing argument, the prosecution acknowledged the stipulation that there was insufficient detail to positively link the photographs and shoes by stating "[w]e are not trying to hide that from you . . . why don't you compare the evidence, and you are certainly allowed to do that." (Trial Tr. vol. 6, 682, lines 16-19).

Dr. Ricky Hicks, a pathologist with Columbus Pathology Laboratories, testified to the injuries Mary Bounds received, and five slides of the victim's body were introduced through his testimony over defense counsel's objections.[18]  (Trial Tr. vol. 5, 534-535).  In addition to the slides, eight photographs were introduced through the testimony of Dr. Hicks, each objected to by defense counsel, and each illustrating an injury sustained by Mrs. Bounds.[19]  (Trial Tr. vol. 5, 538-51).

Petitioner asserts that the introduction of the cast allowed the jury to speculate, without the benefit of expert testimony, about the origins of the footprints, and that combined with the "gruesome and duplicative" photographs, served to prejudice him and deprive him of a fair trial.  (Pet. ¶¶ 324-345).  Petitioner argues that the prosecution invited the jury to speculate regarding evidence that could not be tied to Petitioner, and that the prosecution made an improper argument in closing where defense counsel had no opportunity to rebut.  On direct appeal, the Mississippi Supreme Court  found no abuse of discretion in allowing the photographs and slides into evidence, as their probative value outweighed any prejudicial effect, and any error that did exist was harmless.  *Berry I*, 575 So.2d at 9-10.  The matter was also considered on direct appeal of Petitioner's re-sentencing trial, where the court determined the use of photographs during the trial was not prejudicial or an abuse of discretion by the trial judge, and that they

---

[18] Slide 1 shows the body prior to being cleaned; slide 2 depicts the body after being cleaned and shows the extent of injuries, the source of bleeding, lacerations, and signs of blunt trauma; slide 3 is essentially the same depiction as the first slide and shows blood on the face and clothes; slide 4 is a view of the upper torso of the victim; and slide 5 shows lacerations and trauma to the head on the left and front side of the face.  (Trial Tr. vol. 5, 552-53).

[19] Exhibit 36 is a photograph of the left side of the victim's face and depicts the bruising, and lacerations in the skin and scalp; Exhibit 37 depicts the injuries to the victim's lower legs; Exhibit 38 depicts injuries to the victim's left hand; Exhibit 39 depicts injuries to the inside of the victim's lower lip; Exhibit 40, of the right ear and side of the face, indicates injuries and their extent to the ear and cheek; Exhibit 41 is an enlargement of Exhibit 40; Exhibit 42 is a different angle of the injuries depicted in Exhibit 40 and Exhibit 41; and Exhibit 43 shows a patterned abrasion to the right forehead and eye.  (Trial Tr. vol. 5, 538-51).

were probative of the "heinous, atrocious, and cruel" aggravating circumstance. *Berry II*, 703 So.2d at 277-78. With regard to the plaster cast and photographs of footprints found at and near the crime scene, the Mississippi Supreme Court found there was no abuse of discretion by the trial judge in admitting the evidence. *Berry I*, 575 So.2d at 12. The court noted that there was "no dispute that the footprints were actually found at the scene of the crime" and noted any error in allowing the evidence was harmless. *Id*. at 12-13.

Habeas relief may be granted only if Petitioner's confinement violates the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts review state evidentiary rulings only to determine whether the introduction of the evidence "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228-29, 62 S.Ct. 280, 286, 86 L.Ed.166 (1941). Therefore, the evidentiary rulings of a state court are not cognizable in federal habeas corpus unless it is determined that the trial was rendered fundamentally unfair as a result of the evidentiary error. *See, e.g., Estelle*, 502 U.S. at 67-68, 112 S.Ct. at 480; *Lisenba*, 314 U.S. at 228-29, 62 S.Ct. at 286; *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992)(en banc). An unfair trial is one which has been "largely robbed of dignity due a rational process" in the sense that the erroneous admission was a "crucial, critical, highly significant factor" in the trial. *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (internal citations omitted).

Under Mississippi law, photographs have evidentiary value and are admissible if they describe circumstances surrounding the death, or if they serve to clarify the testimony of a witness. *Neal v. State*, 805 So.2d 520, 524 (Miss. 2002). Such evidentiary rulings will not be disturbed absent an abuse of discretion, and a trial judge's discretion in the admission of such evidence is "almost unlimited . . . regardless of gruesomeness, repetitiveness, and the extenuation of probative value." *Brown v. State*, 690

So.2d 276, 289 (Miss. 1996). If the evidence has probative value and will serve an evidentiary purpose, it is admissible, "even if gruesome, grisly, unpleasant, or even inflammatory." *Noe v. State*, 616 So.2d 298, 303 (Miss. 1993).

In the case at bar, the evidence was introduced and used to clarify probative testimony. The photographs, slides, and cast showed the extent of injuries and evidence gathered from the crime scene. As the evidence was introduced to make the evidence more understandable and it did not mislead the jury or misrepresent facts, the trial was not rendered unfair by its introduction. *See, e.g., Woods v. Johnson*, 75 F.3d 1017, 1038-39 (5th Cir. 1996), *cert. denied*, 519 U.S. 854, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996). Although Petitioner has asserted it was prosecutorial misconduct to present the jury with evidence in this case, Petitioner has failed to demonstrate - or even argue - that the evidence was manipulated or misstated. *See, e.g., Darden*, 477 U.S. at 181-82, 106 S.Ct. at 2472 (1986). Mississippi law allows for the admission of the evidence introduced in this case, and any possible prejudice regarding the footprints and plaster cast was negated by direct and cross-examination, as well as the stipulated agreement that there were insufficient characteristics of the footprint to make a positive identification. In light of the overwhelming evidence against Petitioner, the introduction of probative evidence cannot be said to have denied him a fair trial. The Court finds the Mississippi Supreme Court did not reach a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor was it unreasonable in its determination of facts with regard to Petitioner's claim. Petitioner is entitled to no relief on this issue.

## Claim V. Ineffective Assistance of Counsel

Petitioner raises a claim of ineffective assistance of counsel in five areas, namely, (1) trial counsel's failure to file a motion to quash the arrest and suppress evidence; (2) trial counsel's failure to renew his motion to suppress Petitioner's statement during the testimony of Investigator Gore; (3) trial counsel's

failure to call adequate witnesses at the change of venue hearing; (4) trial counsel's failure to object to prosecutorial vouching for government witnesses and ineffective assistance of counsel regarding the testimony of Investigator Gore at the guilt phase of the trial; and (5) various instances of ineffectiveness at Petitioner's re-sentencing trial.

A claim of ineffective assistance of counsel may only be sustained upon proof that (1) trial counsel's performance was deficient, and (2) trial counsel's deficiency resulted in an unfair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Both the "deficiency" and the "prejudice" prongs must be satisfied, or it cannot be said that the adversarial process was so lacking that it rendered an unreliable result, thereby denying Petitioner a fair trial. *See id.* at 687. To show he was deprived of a fair trial, Petitioner must overcome the presumption of "reasonable professional assistance" by showing counsel's errors prejudiced his defense to such a degree that there exists a reasonable probability if those errors were not committed by counsel, Petitioner would not have received a death sentence. *See id.* at 689-694 (holding a "reasonable probability is a probability sufficient to undermine confidence in the outcome"). Counsel is presumed to have given competent assistance, and Petitioner must overcome that presumption by demonstrating counsel's actions were not within the province a reasonable trial strategy. *See id.* at 689.

The Mississippi Supreme Court, in reviewing Petitioner's claims of ineffective assistance of counsel on post-conviction review, applied *Strickland* precedent. *Berry IV*, 882 So.2d at 161-166. Therefore, to be entitled to relief on his claims of ineffective assistance of counsel, it must be demonstrated that the court was objectively unreasonable in its application of *Strickland* to Petitioner's ineffective assistance of counsel claims. *See Bell*, 535 U.S. at 698-699, 122 S.Ct. at 1852.

Ineffective Assistance of Counsel Claims Not Presented to State Court

Respondents assert Petitioner has failed to present three of his ineffective assistance of counsel claims in state court, thereby defaulting on these claims and precluding federal review: (1) trial counsel's failure to file a motion to quash Petitioner's arrest and suppress "other evidence" due to a lack of probable cause for the warrant's issue; (2) trial counsel's failure to renew his motion to suppress Petitioner's statement during the testimony of Investigator Gore; and (3) trial counsel's failure to adequately cross-examine Investigator Gore regarding the allegedly exculpatory letter indicating the murder of Mrs. Bounds was a case of mistaken identity.

Title 28 U.S.C. § 2254(b)(1) requires a petitioner to present his claims in state court before requesting federal relief in order to exhaust the remedies available to him at the state level. This exhaustion requirement is satisfied when the highest state court has had the opportunity to be presented with the pertinent facts and legal theories of each claim. *See Picard v. Connor*, 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Galtieri v. Wainwright*, 582 F.2d 348, 353 (5th Cir. 1978) (en banc); 28 U.S.C. §§ 2254(b) and (c). To the extent Petitioner is seeking relief on claims not raised in state court, these claims may be considered technically exhausted, as state law would now bar their consideration. *See Gray v. Netherland*, 518 U.S. 152, 161-62, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996); *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Coleman*, 501 U.S. at 732, 111 S.Ct. at 2555; *see also* Miss. Code Ann. § 99-39-5(2) (state prisoner wishing to move for post-conviction relief in capital case generally must do so within one year after relief denied on direct appeal) and Miss. Code Ann. § 99-39-27(9) (dismissal of application for post-conviction relief is final judgment barring successive applications). Mississippi's timeliness and successive petition bars represent adequate and independent grounds for the state judgment, which prevents federal habeas

review of any of the defaulted claims "unless the prisoner can demonstrate case for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. For an ineffective assistance of counsel claim to establish "cause" for a defaulted claim, the independent ineffective assistance of counsel claim must itself be presented to the state court or otherwise independently meet the "cause and prejudice" standard.  *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).

Petitioner attempts to establish "cause and prejudice" for failing to present his ineffective assistance of counsel claims to the court by arguing that the post-conviction process in Mississippi was ineffective, thereby establishing an independent cause and prejudice basis for failing to present the claims.  Petitioner argues Mississippi's mechanism for appointing post-conviction counsel constitutes "an absence of available State corrective process" or is carried out in such a manner as to "render such process ineffective to protect the rights of the applicant."  *See* 28 U.S.C. § 2254(b)(i) and (ii).  Petitioner's only support for this argument is the *Grayson* Memo, which the Court has already found insufficient to relax the application of procedural rules in this case.  Additionally, as there is no constitutional right to counsel on state post-conviction review, Petitioner cannot demonstrate that the failure of post-conviction counsel to raise these issues constitutes sufficient "cause" to overcome the procedural bar asserted against him.  *See, e.g., Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 555-56, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001); 28 U.S.C. § 2254(i).  Although the prejudice prong need not be reached due to Petitioner's failure to establish cause, the Court notes Petitioner has failed to apply any meaningful factual or legal theory to these

claims which would demonstrate prejudice. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 134 n.43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (where petitioner fails to show cause, court need not consider whether prejudice established). Petitioner is entitled to no relief on the preceding claims.

Change of Venue Hearing

Petitioner argues counsel was ineffective for not presenting enough evidence to raise an irrebutable presumption of prejudice and obtain a change of venue at trial. (Pet. ¶¶ 368-377). The Mississippi Supreme Court considered this claim and determined counsel's failure to raise the irrebutable presumption, even if it could be considered cause, was not sufficient to establish prejudice. *Berry IV*, 882 So.2d at 162. In his habeas petition, Petitioner asserts that the merit in his argument is evidenced by the fact that venue was changed for his re-sentencing trial. This argument is unpersuasive. At the time of his re-sentencing, Petitioner had been adjudged guilty of the crime of capital murder and sentenced to death by persons from his community. There was almost certainly publicity surrounding the trial and verdict, thereby diminishing the pool from which to draw prospective, impartial jurors at the conclusion of the initial trial.

Petitioner has failed to identify any additional witnesses who could have provided proof that the atmosphere was inflamed, nor does he offer any evidence that the jury which sat in the original trial was, in fact, impartial. Petitioner has failed to demonstrate anything approaching a reasonable probability that, but for counsel's deficiencies, the result of his trial would have been different. Petitioner is entitled to no relief on this issue.

Ineffectiveness at Guilt Phase

Petitioner's first claim of ineffective assistance of counsel at the guilt phase includes a contention that counsel failed to object to prosecutorial vouching for the credibility of Investigator Gore. (Pet. ¶ 378). The Mississippi Supreme Court noted that this substantive claim was held to be barred for counsel's failure

32

to object at trial. *Berry IV*, 882 So.2d at 163. The court affirmed its alternative holding that the claim was otherwise without merit, for the following reasons: (1) the jury was specifically instructed that the testimony of law enforcement was entitled to no special weight or consideration; (2) the "broad latitude" given to the closing argument of attorneys; and (3) whether to make objections is a strategic matter. *Id.* Petitioner argues the decision of the Mississippi Supreme Court was unreasonable, as "[h]ad trial counsel objected to the improper vouching by the prosecutor for the credibility of the police witnesses, the claim could have been addressed properly by the reviewing court and the results of the proceeding would have been different." (Pet. ¶ 439).

Even if cause were to be assumed, *arguendo*, prejudice is not established by Petitioner's argument. Petitioner's argument is conclusory and does not even attempt to overcome the presumption of counsel acting in accordance with a reasonable trial strategy. *See, e.g., Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066 (petitioner alleging ineffective assistance of counsel must "identif[y] acts or omissions [that] were outside the wide range of professionally competent assistance."). Petitioner is entitled to no relief on this claim.

Petitioner next argues that trial counsel was ineffective for failing to move for a mistrial or request a continuance after the discovery of the anonymous "mistaken identity" letter.[20] (Pet. ¶ 380). The issue of a possible discovery violation was decided on direct appeal, where it was determined counsel had waived the issue. *Berry I*, 575 So.2d at 10. The matter was considered as an ineffective assistance of counsel claim on post-conviction review, and the Mississippi Supreme Court determined the issue was without merit. The court noted that trial counsel had reviewed the letter and determined the defense would not be prejudiced

---

[20] During the course of trial, defense counsel questioned Investigator Gore regarding a letter received by law enforcement stating Mrs. Bounds may have been killed by an unknown assailant as a result of a case of mistaken identity. (Trial Tr. vol. 5, 451-455, 471-483).

by the lack of preparation and found Petitioner made no demonstration as to how his defense was prejudiced as a result of trial counsel's actions. *Berry IV*, 882 So.2d at 165-66. The court determined the decision to move for a mistrial or request a continuance was a matter of trial strategy. *Id.*

One of the roles of defense counsel is to determine when further or additional investigation is unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Petitioner cites the decision of the Mississippi Supreme Court as unreasonable, as "[h]ad the facts contained in the letter regarding the killing of the victim been properly investigated by counsel, the results of the proceeding may have been different." (Pet. ¶ 440). Petitioner's one-sentence argument on the issue fails to overcome the presumption of counsel's competency, and a mere allegation of prejudice is insufficient to provide Petitioner with relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1990) (*Strickland*'s prejudice standard not satisfied with speculation). Petitioner is entitled to no relief on this issue.

Ineffectiveness at Re-Sentencing

Change of Venue

Petitioner argues it was error for trial counsel to fail to develop the record with regard to the change of venue from Chickasaw County to Union County for his re-sentencing trial, as the African-American population of Union County is at least twenty percent lower than that of Chickasaw County. (Pet. ¶ 382). On direct appeal of the re-sentencing, the Mississippi Supreme Court was requested to reconsider its prior holding in *Simon v. State*, 688 So.2d 791, 806 (Miss. 1997), that there is no constitutional right to be tried in a mirror-image of any particular community. *Berry II*, 703 So.2d at 292. The court determined trial counsel's failure to object to the venue change waived the issue. *Id.* The claim was raised as an ineffective assistance of counsel claim on post-conviction review, where the Mississippi Supreme Court noted

34

Petitioner's failure to establish how his rights were impacted by the racial make-up of the county and dismissed the claim. *Berry IV*, 882 So.2d at 163.

In his habeas petition, Petitioner fails to set forth any authority or support for his allegation that failure to object to the change of venue constitutes ineffective assistance of counsel. There is no constitutional deficiency in the performance of counsel if, at trial, there is no established legal or factual basis for an objection . *See Nichols v. Scott*, 69 F.3d 1255, 1288 (5th Cir. 1995). Petitioner fails to support his assertion with any applicable precedent establishing a defendant's right to be tried in a county with a make-up substantially similar to the county in which the crime was committed. Petitioner has failed to demonstrate he is entitled to relief on this issue.

Habitual Offender Status

Next, Petitioner argues counsel was ineffective as he failed to object to the mention of Petitioner as an habitual offender at re-sentencing during voir dire of the jury panel and failed to object to an instruction to the jury containing the same information, thereby waiving appellate review of the issue. (Pet. ¶ 383-384).

On direct appeal of Petitioner's original trial, the Mississippi Supreme Court held the jury should have been made aware of Petitioner's status as an habitual offender, and therefore "life" would mean "life without parole," before sentencing him. *Berry I*, 575 So.2d at 13. The court remanded the case with the specific direction that "the jury is to be informed that Berry has been adjudged an habitual criminal, " as there could be no limiting of the jury's consideration of any circumstance which might cause it to "*decline to impose* the death sentence." *Id.* at 13-14 (*quoting McCleskey v. Kemp*, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987)). After Petitioner was sentenced to death following the re-sentencing trial, Petitioner brought this claim in the ineffective assistance of counsel context on post-conviction review. The Mississippi Supreme Court determined the trial court was attempting to follow the directives

of the court and that there was, therefore, no cause for objection. *Berry IV*, 882 So.2d at 163. Now, in his federal petition, Petitioner argues the use of the term "habitual criminal" is different from "ineligible for parole," and his counsel was ineffective for not objecting to the use of this prejudicial phrase. (Reply 15).

Petitioner cites no case law or authority for his position, nor does he set forth any argument as to what grounds counsel had for making an objection during voir dire of the panel. (Pet. ¶¶ 383-384). Trial counsel made a Motion in Limine to preclude the prosecution from referencing Petitioner as an habitual offender. (Re-Sentencing Trial Tr. vol. 1, 122-24). Petitioner's status as an habitual criminal was referenced by the trial judge on three separate occasions during voir dire of the jury panel. (Re-Sentencing Trial Tr. vol. 5, 252, lines 10-11, No.93-DP-59, June 22, 1992; Re-Sentencing Trial Tr. 5, 253, lines 14-16; Trial Tr. vol. 5, 260, lines 15-16, 19-21). Moreover, a review of the record shows counsel did object to a sentencing instruction containing reference to Petitioner as an habitual criminal, which the trial judge overruled due to the directive of the Mississippi Supreme Court. (Re-Sentencing Trial Tr. vol. 7, 543-45, No. 93-DP-59, June 24, 1992).[21] The record in this case shows the trial judge was unmistakably clear in that he thought it the duty of the court to specifically inform the jury of Petitioner's habitual offender status. Trial counsel had twice brought it to the court's attention that he wished the term "habitual offender" to be omitted, and he was overruled on both occasions. Counsel owed no duty to continue objecting. *See Henry v. Wainwright*, 686 F.2d 311, 313-314 n. 19 (5th Cir. 1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1407 (1983) (objection after earlier unsuccessful objection would have only "belabor[ed] the point"). Petitioner is entitled to no relief on this issue.

---

[21]Sentencing Instruction No. 1 reads, in part, "[t]he Defendant has been found guilty of the crime of Capital Murder and *has been adjudged an habitual criminal*. You must now decide whether the Defendant will be sentenced to death or to life imprisonment *without the benefit of probation or parole*." (Italics show instruction as amended) (Trial Tr. vol. 2, 200, No. 93-DP-59).

<u>Hearsay Testimony</u>

Fourth, Petitioner argues he received ineffective assistance when his counsel failed to object to Sheriff Bryan's testimony regarding Petitioner's prior conviction for simple assault on Officer Jimmy McClemore. Petitioner argues Bryan was allowed to give irrelevant, prejudicial hearsay testimony regarding Petitioner "supposedly beating the officer down to his knees." (Pet. ¶ 386). On post-conviction review, the Mississippi Supreme Court rejected Petitioner's claim for failure to offer support as to why the testimony, though likely hearsay, constituted ineffective assistance of counsel. *Berry IV*, 882 So.2d at 163-64. The court determined Petitioner could not couch his claim as ineffective assistance of counsel without offering proof of how the failure to object supports that contention, and it further noted that whether to make an objection is within defense counsel's province as a matter of trial strategy. *Id*. at 164.

A review of the record establishes that, on direct examination, a certified copy of Petitioner's prior conviction for assault was introduced to establish the aggravating factor of a prior violent felony conviction. (Re-Sentencing Trial Tr. vol. 6, 420, No. 93-DP-59, June 23, 1992). On cross-examination, defense counsel sought to discredit the conviction by inquiring into the civil suit Petitioner won against Officer McClemore as a result of the officer shooting Petitioner during the incident establishing the felony conviction. (Re-Sentencing Trial Tr. vol. 6, 421-22). On re-direct, District Attorney Little asked Bryan why Petitioner was shot by Officer McClemore, to which Bryan replied, "[Petitioner] had beat him down to his knees when he shot him; and [Officer McClemore] was afraid that if he lost control of his weapon, that he would be shot with it." (Re-Sentencing Trial Tr. vol. 6, 423, lines 7-9). Defense counsel initiated the line of questioning that prompted Officer McClemore's response, and it is not unreasonable to assume defense counsel, as a matter of strategy, determined not to object to the comment. Petitioner is entitled to no relief on this issue.

<u>Biblical Reference in Closing Argument</u>

Next, Petitioner alleges trial counsel was ineffective for failure to object or move for a mistrial when the prosecutor argued biblical law to justify imposition of the death penalty during the State's closing argument, thereby waiving appellate review of the issue. (Pet. ¶ 387). Prior to closing argument and outside of the presence of the jury, defense counsel requested the trial court direct the prosecutor to refrain from quoting the Bible during the State's closing. (Re-Sentencing Trial Tr. vol. 7, 578, No. 93-DP-59, June 25, 1992). The trial court informed counsel that objections made during the course of argument would be ruled upon, but cautioned that biblical reference during closing argument was not, per se, condemned. (Re-Sentencing Trial Tr. vol. 7, 579). During his closing argument, District Attorney Little argued regarding capital punishment, "it's authorized by Mississippi, and it's been authorized by scriptural law for a long time." (Re-Sentencing Trial Tr. vol. 8, 606, lines 21-22, No. 93 DP-59, June 25, 1992). Later in his closing argument, the prosecutor went on to comment that Petitioner had "no brakes" and told the jury he would given them an illustration of "how old that problem is." (Re-Sentencing Trial Tr. vol. 8, 607, line 5). The prosecutor stated, "[h]ow blessed is the man who does not walk in the way of the wicked- - . . . nor stand in the path of sinners nor sit in the seat of scoffers." (Re-Sentencing Trial Tr. vol. 8, 607, lines 6-8, 13, 14). Defense counsel's objection to this statement was overruled. The prosecutor then referred to Petitioner taking the "wrong path" and sitting "in the seat of the scoffer" when he killed Mary Bounds. (Re-Sentencing Trial Tr. vol. 8, 607-08).

On direct appeal of the re-sentencing trial, these facts were brought as a substantive prosecutorial misconduct claim, which the Mississippi Supreme Court held procedurally barred for failure to make a contemporaneous objection regarding the portion of the prosecution's argument referencing "scriptural law." *Berry II*, 703 So.2d at 281. Regarding the remainder of the argument, the court noted the "broad

latitude" afforded counsel in closing argument and further held that using the Bible in closing argument as an "historical reference" was not error. *Id.* On post-conviction review, the Mississippi Supreme Court, while finding the issue procedurally barred for failure to make a contemporaneous objection, also stated that the allegations were considered during Petitioner's direct appeal of the re-sentencing trial and the court "found there to be no prosecutorial misconduct." *Berry IV*, 882 So.2d at 164-65.

Petitioner's assertion of error regarding the "scriptural law" argument of the prosecution is precluded from federal review on independent and adequate state law grounds. *See Stokes*, 123 F.3d at 860 (5th Cir. 1997). Even if this reference were considered with the remainder of the prosecution's argument and the Court were to consider the totality of the prosecutor's biblical references, this argument fails to persuade the Court. Petitioner fails to cite any case law or offer any support for why his claim should succeed. Petitioner has failed to show how counsel was deficient or what prejudice resulted from trial counsel's actions. As Petitioner has failed to persuade that counsel's actions were objectively unreasonable with regard to the portion of this argument that is viable before the Court, he also fails to persuade that counsel's failure to object constitutes cause to overcome the bar imposed by the Mississippi Supreme Court. No suggestion was made to the jury that it consider biblical law in its decision, and the trial court instructed the jury what information was to be considered in reaching a verdict. Petitioner is entitled to no relief on this issue.

<u>Theatrical Acts</u>

Petitioner next asserts that trial counsel's failure to request the trial judge issue an admonition or cautionary instruction to the jury to disregard the "theatrical acts" of the prosecutor constituted ineffective assistance of counsel. (Pet. ¶ 388). Petitioner alleges that during the course of closing argument, the

prosecutor stomped on the victim's clothes.[22]  The Mississippi Supreme Court determined that the prosecutor's "stomping" on the victim's clothes during closing argument was a demonstration in argument of the facts of the case, the egregiousness of which was difficult to ascertain from reading the dry record. *Berry II*, 703 So.2d at 280-81.  The court noted that no cautionary instruction was requested by counsel and further found no overreaching by the prosecutor or prejudice to Petitioner as a result of the brief display. *Id.* at 281.  On post-conviction review, Petitioner raised the claim in the context of ineffective assistance of counsel, and the Mississippi Supreme Court determined the matter had been previously considered and no prosecutorial misconduct had been found.  *Berry IV*, 882 So.2d at 165.

The pertinent part of the prosecutor's closing is as follows: "BY MR. LITTLE: But what did he do, he struck her, and struck her and struck her.  He stomped her.  BY MR. LEWIS: We would object to that and like the record to reflect he is stomping on the floor.  BY THE COURT: All right.  Go ahead, Mr. Little."  (Re-Sentencing Trial Tr. vol. 8, 617, lines 12-17).  Petitioner and Respondents have differing opinions regarding what the trial judge meant when he stated, "[g]o ahead, Mr. Little."  (Re-Sentencing Trial Tr. vol. 8, 617).  Respondents argue the objection was sustained, while Petitioner argues trial counsel was ignored.  Regardless of which interpretation is correct, trial counsel was not deficient in his representation of his client in regard to this issue.  Whether to object to a line of argument is a matter of trial strategy.  As Petitioner notes, "[i]n such situations, it [is] not advisable to continue on and call even more undue attention to the remarks and actions of the prosecutor by asking for a cautionary instruction.  A jury cannot be instructed to disregard a matter without being again directed to that matter."  (Reply 15-16). Petitioner is entitled to no relief on this issue.

---

[22]  The Mississippi Supreme Court noted in its opinion that the record is unclear whether the victim's clothes were actually lying on the floor during argument.  *See Berry II*, 703 So.2d at 280.

Mitigation Evidence

In his next claim of ineffective assistance of counsel at the re-sentencing phase, Petitioner alleges counsel was ineffective for failing to develop and present proper mitigation evidence. (Pet. ¶¶ 389-393). Petitioner argues that there was a wealth of material evidence available through family members who were never interviewed by trial counsel. Petitioner specifically alleges that trial counsel's presentation of one social worker and two psychologists lead to a "cold and clinical" summary of Petitioner's life and allowed a prosecutorial argument that the professional witnesses testified as defense counsel wished them to testify. The Mississippi Supreme Court considered this claim on post-conviction review and found Petitioner cited no support for his claim that calling only professional witnesses constituted grounds for ineffective assistance of counsel, nor did that fact establish counsel's deficient performance. *Berry IV*, 882 So.2d at 166. There was no evidence presented to the court that counsel "conducted himself outside the professional norms." *Id*.

Petitioner presented several affidavits to the Mississippi Supreme Court from friends and family members in his application for post-conviction review.[23] (*See* No. 2002-DR-301-SCT, Ex. 3-7). The affidavits establish that these persons would have testified that Petitioner was "slow" and nonviolent. With the exception of the affidavit from Velma Berry, Petitioner's mother, the affidavits also establish that these persons were not contacted to speak on Petitioner's behalf. Petitioner has requested this Court consider the affidavits in support of his claim that trial counsel was ineffective for failing to present this available mitigating evidence.

---

[23] The following affidavits were attached to the post-conviction application: (1) Charlene Avent, aunt of Berry; (2) Pat Berry, aunt of Berry; (3) James Edwards, family friend; (4) Greg Berry, nephew of Berry, and (5) Velma Berry, mother of Berry.

It can be error for trial counsel to fail to present available mitigating evidence without making a reasoned trial strategy to refrain from introducing such evidence. *See, e.g., Wiggins*, 539 U.S. 510, 123 S.Ct. 2527; *Williams*, 529 U.S. 362, 120 S.Ct. 1495. The record reflects that trial counsel presented mitigation evidence to the jury through three professional witnesses. First, Dr. Paul Blanton, admitted by the court as an expert in the field of neuropsychology, testified as to Petitioner's borderline intellectual functioning and frontal lobe brain impairment. (Re-Sentencing Trial Tr. vol. 7, 473-475, No. 93-DP-59, June 24, 1992). Next, Hope Stone, County Director of the Department of Human Services of Benton County, testified about Petitioner's childhood based on her interviews with Petitioner, his parents, three siblings, a neighbor, and a former employer. (Re-Sentencing Trial Tr. vol. 7, 495-511). Ms. Stone testified as to the marital conflict and physical abuse in the Berry's home, Petitioner's developmental delays in speaking, his poor educational performance, and the poor bond between the parents and the children in the family. (Re-Sentencing Trial Tr. vol. 7, 495-511). Finally, Dr. Lewis Mulry Tetlow, a clinical psychologist, testified regarding psychological tests he administered to Petitioner at Parchman Penitentiary. (Re-Sentencing Trial Tr. vol. 7, 512-530). Dr. Tetlow testified he believed Petitioner to suffer from a diagnosis of schizophrenia, paranoid type, which could manifest itself in a number of ways. (Re-Sentencing Trial Tr. vol. 7, 516-519). Dr. Tetlow was allowed to opine that Petitioner had suffered severe abuse and was likely acting-out hostility at his mother when Mrs. Bounds was killed, and that he would not likely be a threat to men in prison. (Re-Sentencing Trial Tr. vol. 7, 524).

Petitioner does not demonstrate that failure to call family members to testify on his behalf constitutes deficient performance or that prejudice resulted from trial counsel's decision to call only professional witnesses. The balance of information contained in the affidavits was presented to the jury, such as Petitioner's poor educational performance and difficult upbringing. Moreover, family members

testified at the sentencing portion of the original trial, which resulted in a death sentence.[24]  Counsel was aware of the availability of some family members to testify and apparently made a tactical decision not to call those witnesses.  It cannot be said that the decision constituted ineffective assistance of counsel under these circumstances.  *See Wiggins*, 539 U.S. at 522-23, 123 S.Ct. at 2536 (holding tactical decision to limit investigation of mitigating evidence is reasonable to extent the decision to limit investigation is itself reasonable); *Williams*, 125 F.3d at 278 (finding failure to present mitigating testimony from family and loved ones not sufficient to establish deficiency in performance if attorney could have tactically determined that the presentation of such evidence would be unsound decision).  Petitioner is entitled to no relief on this issue.

Cumulative Effect of Errors

Petitioner makes a final ineffective assistance of counsel claim due to the cumulative effect of his attorney's errors at trial. (Pet. ¶¶ 410-412).  As Petitioner has failed to demonstrate merit on any of his claims of ineffective assistance of counsel, the cumulative claim also fails.  See *United States v. Moyle*, 951 F.2d 59, 63 n.7 (5th Cir. 1992); *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000).

## **Claim VI.  *Batson* Claim**

On direct appeal from Petitioner's 1992 re-sentencing trial, the Mississippi Supreme Court remanded Petitioner's case for a *Batson* hearing, while affirming on all remaining issues.  *Berry II*, 703 So.2d 269.  Following the hearing, the trial court ruled there was no violation in the State's use of its

---

[24]  In the sentencing phase of the original trial, the following persons testified on behalf of Petitioner: family friend, Wommack Hensley (717-720); relative by marriage, David Smith(720-723); neighbor to the Berry's, Jewel Pepper (723-726); aunt to Petitioner, Mary Berry (726-28); Petitioner's former employer, Willie Cobb (729-730); Petitioner's mother, Thelma Berry (730-732); and Petitioner's father, William Berry (732-736).  (Trial Tr. vol. 6, No. 89-DP-199, October 27, 1988).

peremptory challenges. (Batson Hearing Volume, 27, lines 13-21, January 16, 1998). On appeal, the Mississippi Supreme Court affirmed the finding of the trial court. *Berry III*, 802 So.2d at 1047. Petitioner asserts in his habeas petition that the trial court erred in finding the proffered reasons for the exercise of the State's peremptory challenges racially neutral, and the decision of the Mississippi Supreme Court was contrary to and an unreasonable application of the precedent set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, Petitioner argues African-American venire members were struck from the panel based on the prosecutor's prejudice that African-American jurors would not vote to impose the death penalty.

In determining whether a *Batson* violation occurred, the Mississippi Supreme Court laid out the procedure to be followed in analyzing a *Batson* challenge. First, the court noted, the opponent of the challenge must make out a prima facie case of racial discrimination, thereby shifting the burden of production to the other party to provide a race-neutral explanation for the strike. *Berry III*, 802 So.2d at 1037. The opponent of the challenge may then rebut the proffered explanation, and the court makes factual findings to determine if the prosecution engaged in purposeful discrimination. *Id.* If the opponent makes no rebuttal to the race-neutral explanation for the strike, the court bases its decision on reasons given by the party defending the use of the peremptory challenge(s). *Id.* The relevant question under step two, the court determined, is whether "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* (internal citations omitted). At step three, the trial court determines if the reasons given were pretextual. *Id.* at 1038. Throughout the analysis, the burden of persuasion is on the opponent of the strike. *Id.*

Five African-American venire members were struck by the State, and the Mississippi Supreme Court addressed each challenged strike. *Id*. at 1038-46. Following the identified *Batson* procedure, the

44

Mississippi Supreme Court determined the first step in the analysis was moot, as the prosecution offered its race-neutral explanations at trial. *Id.* The court then considered the proffered reasons for the strike of each individual juror. The court found the prosecutor's strike of Sara Mosley (Juror No. 22), for being the same age as Petitioner, possibly living near Petitioner, and hearing about the case on television, to be race-neutral. *Id.* at 1039-40. The court found that the explanation given for striking Billie Wayne Stokes (Juror No. 32), which included a prior DUI, relatives in jail, and an unstable employment history, as race-neutral reasons. *Id.* at 1040-41. The court determined the proffered explanation for striking Albert Bell (Juror No. 42), that he might not be "fair to the proof in regard to the death penalty," to be race-neutral. *Id.* at 1041. The court determined the State's concern about Lore G. Stubbs' ability to last the duration of the trial attentively due to her diabetic condition a race-neutral reason. *Id.* at 1044. Finally, the court reviewed the reasons proffered for striking Roberta Ivy (Juror No. 58), and found her spotty employment history was a sufficiently race-neutral reason for the State to exercise a peremptory challenge against her. *Id.* at 1045-46.

The Mississippi Supreme Court also addressed Petitioner's argument that the trial court failed to make specific findings with regard to each juror after the proffered reasons were found race-neutral and found defense counsel failed to make a contemporaneous objection or request findings be made on the record.[25] *Id.* at 1046-47. The court determined the failure to make a contemporaneous objection would bar this claim, but that the merits would likewise fail, as defense counsel voiced his belief that the trial judge had followed the Mississippi Supreme Court's mandate in the trial court's recitation of findings. *Id.* at 1047.

---

[25] In his federal petition, Petitioner does not challenge the trial court's failure to make specific findings with regard to each juror.

In this habeas action, Petitioner asserts the failure of the prosecutor to individually voir dire African-American venire members regarding their views on the death penalty constitutes evidence of prejudice in the prosecutor's use of peremptory challenges. (Pet. ¶ 471). Petitioner supports his argument by pointing out that an African-America juror was seated only after the State had used all twelve of its peremptory challenges. (Pet. ¶ 468). Respondents assert that two Caucasian jurors were struck by the State after Juror Ivy was struck, noting that the prosecutor could have foregone strikes against Caucasian jurors if the goal had been to prevent African-American jurors from being seated. (Answer 205-06).

To prevail on his claim, Petitioner must demonstrate that the Mississippi Supreme Court made "'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'" in affirming the trial court's determination that no *Batson* violation occurred. *Rice v. Collins*, — U.S. —, 126 S.Ct. 969, 974, 164 L.Ed.2d 284 (2006) (*citing* 28 U.S. C.§ 2254(d)(2)). As the opponent of the use of the peremptory strikes in this case, Petitioner bears the burden of persuasion. *See Purkett v. Elam*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Petitioner attempts to rebut the proffered race-neutral reasons by arguing that it is a deprivation of one's constitutional right to a fair and impartial jury to exclude prospective jurors based on their death penalty views. Petitioner cites *Gray v. Mississippi*, 481 U.S. 648, 659, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987); *Lockhart v. McCree*, 476 U.S. 162, 176, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) in support of his argument. (Pet. ¶¶ 436-465).

Petitioner's argument is not well-taken, as the precedent on which he relies all involve challenges for cause. It is well-settled that a prosecutor's explanation for a peremptory challenge "need not rise to the level of justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Unlike race, opposition to the death penalty is not a distinctive characteristic singularly held by an identifiable

46

group.  *See Lockhart*, 476 U.S. at 175-77, 106 S.Ct. at 1766-67.  This Court is not aware of Supreme Court

precedent which supports Petitioner's proposition that a potential juror's view of the death penalty is an

impermissible reason to exercise a peremptory strike.[26]  The instant petition fails to identify any authority

pertinent to the facts of this case in alleging the decision of the Mississippi Supreme Court was

unreasonable.  Moreover, Petitioner only specifically references two jurors in regard to his argument that

the decision of the Mississippi Supreme Court was unreasonable, that being Juror Stokes and Juror Ivy.

(Pet. ¶¶ 469-470).[27]  A constitutionally acceptable reason was given for striking each potential juror at

issue, and the shared characteristic of race is insufficient to establish pretext.  *See Moore v. Keller*

*Industries, Inc*., 948 F.2d 199, 202 (5th Cir. 1991) (where multiple reasons for a strike exist, there is no

proof of pretext merely because some of the jurors share characteristics).  Petitioner has failed to

demonstrate the decision of the Mississippi Supreme Court was unreasonable in light of the facts presented

and is entitled to no relief on this claim.

## Claim VII.  Death Sentence Predicated on Arbitrary Factors

Petitioner points to two incidents at the re-sentencing trial which he claims resulted in his death

sentence being imposed based on arbitrary factors: (1) the testimony and evidence introduced through the

testimony of Gena Watson, daughter of the victim; and (2) closing argument by the prosecutor.  (Pet. ¶¶

474-477).

---

[26] *See, i.e., Brown v. North Carolina*, 479 U.S. 940, 107 S.Ct. 423, 424, 93 L.Ed.2d 373 (1986)(O'Connor, J., concurring in denial of writ of certiorari) ("Because a juror's attitudes towards the death penalty may be relevant to how the juror judges, while, as a matter of law, his race is not, this case is not like *Batson*.").

[27] Petitioner mentions Juror Sarah Mosley and Juror Lore Stubbs in his petition under "Summary of the Facts," but he fails to cite any argument as to why the proffered reasons given for the strikes were pretextual, or why the Mississippi Supreme Court's determination was unreasonable.  Juror Albert Bell is not referenced in the petition.

First, Petitioner alleges it was error to present to the jury Gena Watson's testimony regarding personal characteristics of her mother, such as her age, and allow the introduction of a photograph of Mrs. Bounds and her husband. (Pet. ¶¶ 474-476). On direct appeal, the Mississippi Supreme Court found that Gena Watson's testimony was admissible if it was necessary for development of the case and relevant to any statutory aggravating circumstance, and from the totality of the evidence determined Petitioner was not prejudiced by the introduction of probative evidence of a crime he committed.[28] *Berry II*, 703 So.2d at 276.

There is no federal constitutional prohibition to the introduction of victim impact evidence. *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). Petitioner is entitled to relief on this claim only if the introduced evidence was "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Id.* at 825, 2608. In his federal petition, Petitioner fails to allege the prosecution misstated the evidence or manipulated facts with regard to the evidence at issue. Additionally, the jury was instructed to base its decision on the evidence alone, and the evidence against Petitioner was sufficient for the jury's determination the death penalty was warranted. *See, e.g., Darden*, 477 U.S. at 182, 106 S.Ct. at 2472. Petitioner fails to demonstrate how the introduction of Gena Watson's testimony, which was probative to the circumstances of the case and the underlying kidnaping offense, denied him a fundamentally fair trial. Petitioner is entitled to no relief on this issue.

In his second allegation of error, Petitioner asserts the prosecution improperly argued for the death penalty, while weaving in personal opinion and themes of "justice" in its closing argument. Petitioner cites the following in support:

> What mercy did Mrs. Bounds have? He took her away from her daughter.
> Where is the mercy and justice? She won't be getting to go by and she her mother

---

[28] For example, the court determined while Mrs. Bounds' church attendance might border on relevancy, Petitioner accosted the victim as she was leaving church. 703 So.2d at 276.

now on 389. She worked 24 years at Seminole, the garment factory there in Houston, as quality control.

What about her friends? Where is her mitigation or justice, her mercy, her work, enjoyment of life?

Where is the justice and mitigation and mercy of being a faithful member of the First Baptist Church, a member of the choir, taught Sunday School, there when the doors are open? I do good to get there on Sunday. I try to go every Sunday.

This woman was there every time the doors were open, at night, Sunday night. She missed choir practice that night. No doubt about that.

What about Charlie, her husband? Mary didn't get to enjoy the fruitful years of her life with him. He didn't with her. There is no justice, mitigation, and mercy there. Just the cruel, atrocious, heinous killing is what happened. Kidnapping is all it was, no justification whatsoever. None has been shown here to you today.*****

I submit to you, ladies and gentlemen, based on the proof and evidence presented to you, that there is only one verdict in my opinion. That is this man receive the death penalty, the same penalty Mary Bounds got without hearing by jury or a trial.

That man acted as judge, jury, and executioner all in a matter of minutes. She didn't have any of the benefits of any justice of mitigation or mercy; and there is none due here in my humble opinion. (Pet. ¶ 477) (citing Re-Sentencing Trial Tr. vol. 7, 590, 592, No. 93-DP-59, June 24, 1992).

The Mississippi Supreme Court determined the prosecutor's argument was possible error under the recent case law of the court but held the lack of contemporaneous objection waived the error. *Berry v. State*, 703 So.2d at 276. In his habeas petition, Petitioner asserts that the State contemporaneous objection bar need not be recognized, as it is not consistently applied. (Reply 18-19, *citing King v. Puckett*, 1 F.3d 280, 283-84 (5th Cir. 1993).

An unambiguously based denial of relief on state law grounds that are independent of federal law and adequate to support the judgment precludes federal habeas consideration of the claim. *Coleman*, 501 U.S. at 729, 111 S.Ct. 2553; *Henderson v. Cockrell*, 333 F.3d 592, 604 (5th Cir. 2003). A state procedural rule is presumed adequate when used by a state court to make an unambiguous denial of relief, but a Petitioner may rebut the presumption by demonstrating the rule is not regularly applied by the state. *Sones v. Hargett*, 61 F.3d 410, 416-417 (5th Cir. 1995). Petitioner bears the burden of demonstrating that the

contemporaneous objection bar was not regularly applied at the time his appeal was decided, and that the bar was not applied to claims similar to his own. *See Sones*, 61 F.3d at 416; *Amos v. Scott*, 61 F.3d 333, 340 (5th Cir. 1995).

Petitioner argues that *King v. Puckett* found Mississippi's contemporaneous objection bar to be inadequate to preclude federal review of waived claims. *King* is distinguishable from the case at bar, as the respondent in that case was not allowed to rely upon the contemporaneous objection bar or the direct appeal bar because they had not been consistently applied in cases where the failure to object was related to an aggravating sentencing factor of "especially heinous, atrocious, or cruel" which was not accompanied by limiting instructions. *See King*, 1 F.3d at 284 (precedent established "especially heinous" instruction unconstitutionally broad without limiting instruction and Mississippi Supreme Court could not bar claim when it failed to cure constitutional error regarding instruction by engaging in re-weighing or harmless error analysis). Petitioner fails to show the State has inconsistently applied the contemporaneous objection bar to his claim or claims similarly situated; therefore, the procedural bar is not waived. *See, e.g., Hill v. Black*, 887 F.2d 513, 516 (5th Cir. 1989), *vacated on other grounds*, 498 U.S. 801, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990) (finding Mississippi "regularly applies the contemporaneous objection rule to the cases before it."); *Wilcher v. Hargett*, 978 F.2d 872, 878 (5th Cir. 1992) (recognizing Mississippi's contemporaneous objection bar precluded review of merits of claim). Petitioner has not established cause for and prejudice resulting from the imposition of the procedural bar in this instance. *See Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (whether to object is tactical decision and does not demonstrate cause sufficient to allow habeas review of defaulted claim); *see also Engle*, 456 U.S. at 134 n.43, 102 S.Ct. at 1575 (where petitioner fails to show cause, court need not consider whether prejudice established). Petitioner is entitled to no relief on this issue.

Petitioner asserts the combination of Gena Watson's testimony and the resulting prosecutorial argument deprived him of a fair and reliable sentencing. Finding no error in the testimony of Gena Watson and given the waiver of any possible error in the prosecution's closing argument, there is no cumulative error analysis to conduct with regard to this claim. *See Derden*, 978 F.2d at 1454 (holding cumulative errors in state trial may properly form basis of federal habeas relief only where individual errors were of constitutional dimension, errors were not procedurally defaulted, and errors so egregious as to violate due process). The Court finds the Mississippi Supreme Court did not reach a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor was it unreasonable in its determination of facts with regard to Petitioner's claim. Petitioner is entitled to no relief on this claim.

### Claim VIII. Prosecutorial Misconduct

Petitioner asserts several instances of prosecutorial misconduct during his re-sentencing trial: (1) the prosecutor's appeal to "gut emotion" by "stomping around the clothing" of the victim, which was purportedly lying on the courtroom floor, during rebuttal closing arguments; (2) citation to biblical law to inflame the jury; (3) interjection of his personal opinion that Petitioner should receive the death penalty; and (4) seeking the death penalty after Petitioner refused to plead guilty in exchange for a life term as vindictive. (Pet. ¶¶ 484-487, ¶¶ 502-506).

The Court first considers the issue of the prosecutor stomping on the floor during closing argument. The Mississippi Supreme Court acknowledged the actions as "theatrical" and determined that it was a brief action used in conjunction with argument on facts of the case. *Berry II*, 703 So.2d at 281. The court also noted that although the egregiousness of the prosecutor's actions were difficult to determine from the record, there could be no error as no request was made of the trial judge that the jury be told to disregard the prosecutor's actions. *Id.* The court further determined there was no overreaching by the prosecutor,

and that Petitioner was not prejudiced as a result of the demonstration. *Id.*

Petitioner is entitled to relief on his claim only if the prosecutor's actions rendered proceedings against him fundamentally unfair. *See Darden*, 477 U.S. at 181, 106 S.Ct. at 2471; *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Petitioner makes no allegation that the prosecutor misstated evidence or infringed upon a specific constitutional guarantee, and the evidence against him was sufficient to warrant the sentence he received. Petitioner fails to set forth any argument as to how he was denied due process as a result of the prosecutor's argument, thus he fails to demonstrate the Mississippi Supreme Court was unreasonable in its application of law or determination of facts. Petitioner is entitled to no relief on this issue.

Second, Petitioner argues the prosecutor's reference to biblical law in rebuttal closing arguments was improper. Specifically, Petitioner cites to a specific improper statement that capital punishment had "been authorized by scriptural law for a long time." (Re-Sentencing Trial Tr. vol. 8, 606, lines 21-22). Petitioner alleges this was an improper and inflammatory. In the direct appeal of petitioner's re-sentencing trial, the Mississippi Supreme Court considered two separate instances of alleged prosecutorial misconduct in regard to biblical references. The first was the statement at issue here. The court determined there was a failure to contemporaneously object and held the matter barred. *Berry II*, 703 So.2d at 281.[29]

Petitioner's claim was denied on independent and adequate state grounds. *See Coleman*, 501 U.S. at 729-30, 111 S.Ct. 2553-54 (unambiguous denial of relief on adequate and independent state law grounds precludes habeas review of claim); *Hill*, 887 F.2d at 516 (contemporaneous objection bar regularly

---

[29] Later in closing argument, the prosecutor made specific reference to biblical characters, and the court determined the Bible was used as an "historical reference to illustrate [a] point to the jury. He did not use the reference to urge the imposition of the death penalty as Berry claims. Accordingly, Berry's claim is meritless." *Berry II*, 703 So.2d at 281. Petitioner does not cite this portion of argument as error under this claim.

applied).  Petitioner does not attempt to establish cause and prejudice to relax the bar's application and is entitled to no relief on this issue.

Third, Petitioner cites the closing argument by Prosecutor Gregory as reversible error, arguing "the statement by the Prosecutor of his personal opinion that Petitioner should receive the death penalty had no place in the closing argument."  (Pet. ¶ 504).   On direct appeal of Petitioner's re-sentencing, the Mississippi Supreme Court considered Petitioner's claim that the prosecutor commanded the jury return the death penalty for the inhabitants of Chickasaw County.  *Berry* II, 703 So.2d at 281. The Mississippi Supreme Court held the matter barred for failure to contemporaneously object.  *Id.* at 281-82.  In his habeas petition, however, Petitioner raises a different claim by asserting it was error for the prosecutor to give his personal opinion about the propriety of the death sentence in this case.  (Pet. ¶ 504).  The claim presented to the Mississippi Supreme Court was that the prosecutor appealed to "public sentiment" rather than the evidence by asking the jury to return a sentence of death for the people of Chickasaw County.  (Appellant Br. 24-25, 93-DP-59).  The claim that the prosecutor improperly inserted his personal opinion in closing argument has not been properly presented for review to the Mississippi Supreme Court as a substantive claim and is therefore not cognizable on federal habeas review.  *See, e.g., Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001)(federal habeas petition containing different factual claims and/or legal theories than those presented in state court contains unexhausted claims not properly before federal court).

However, even if this claim were to be construed to be the same as that presented to the Mississippi Supreme Court, it is not basis for relief.  In determining whether Petitioner was denied due process as a result of unfair proceedings, this Court examines the comments of the prosecutor within the totality of the trial.  *See United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).  The appropriate inquiry is whether the jury's verdict is in doubt as a result of the alleged misconduct.  *See*

*United States v. Kelly*, 981 F.2d 1464, 1473 (5ᵗʰ Cir. 1993), *cert. denied*, 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993). In doing so, the court must consider: "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the appellant['s] guilt." *Id.* Throughout the analysis, the focus is on the fairness of the trial and not the blameworthiness of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982).

   In reviewing the passage of the record cited by Petitioner as error, the prosecutor is arguing his case and making comments on evidence presented at trial.[30] Moreover, the jurors were instructed, in part, that "[a]rguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any argument, statement, or remark having no basis in the evidence should be disregarded by you." (Re-Sentencing Trial Tr. vol. 2, 271, Instruction C.01). When a prosecutorial argument urges a particular conclusion based on the evidence presented, it is not reversible error simply because the prosecutor interjects "I" in his summation. *See United States v. Rodarte*, 596 F.2d 141, 146-47 (5ᵗʰ Cir. 1979). Petitioner is not entitled to relief on this issue.

   Fourth, Petitioner asserts the prosecutor sought the death penalty upon re-sentencing for vindictive purposes. In the original trial, Petitioner was offered and refused a lesser sentence which did not include the death penalty - an offer the State refused to extend at the time of re-sentencing. (Pet. ¶ 505).

---

   [30] For example, a portion of the record cited by Petitioner includes the following statement by Prosecutor Gregory: "I submit to you, ladies and gentleman, based on the proof and evidence presented to you, that there is only one just verdict in my opinion. . . . She didn't have the benefit of any justice of mitigation or mercy; and there is none due here in my humble opinion. Go back and consider the evidence and the proof, and I know you will find, agree with me on my opinion, the man should be punished to death." (Re-Sentencing Trial Tr. vol. 7, 591-92).

Prior to re-sentencing, defense counsel made a motion to bar the State from seeking the death penalty. (Re-Sentencing Trial Tr. vol. 1, 138-44, "Motion to Prohibit the State From Seeking Imposition of the Death Sentence on Account of the District Attorney's Arbitrary and Capricious Use of the Death Penalty in this Capital Case and Authorities in Support Thereof," 93-DP-59). Defense counsel moved the court to enter a life sentence based upon what counsel alleged to be an arbitrary application of the death penalty and requested the court require the prosecutor to distinguish this case from two other cases in which a plea bargain was offered. (Re-Sentencing Trial Tr. vol. 4, 4-5, "Pretrial Motion," 93-DP-59, February 17, 1992). The prosecutor distinguished the case at bar from the two other cases cited by defense counsel, as the cited cases involved victims and perpetrators who were family members and included defendants with no significant criminal history. (Re-Sentencing Trial Tr. vol. 4, 6-7). The court found the motion of defense counsel not well-taken and denied the motion. (Re-Sentencing Trial Tr. vol 4, 7) (Order denying motion, Re-Sentencing Trial Tr. vol. 2, 181).

On appeal, the Mississippi Supreme Court found Petitioner had come forth with no evidence that plea bargains were offered to defendants arbitrarily and denied relief. *Berry II*, 703 So.2d at 282. The court noted Petitioner's only support for his argument was the motion made by defense counsel which included references to the two cases where plea bargains were offered. *Id.* The court determined that the United States Supreme Court has held, insofar as the actions of the prosecutor are

> [w]ithin the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663-668-69, 54 L.Ed.2d 604 (1978)(*quoting Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

*Id.*

This Court finds Respondents' argument, that "nothing in the federal law holds that a prosecutor is required to renew a plea offer that has been refused by a defendant once he has put the state to its proof and obtained a result he did not like," to be persuasive. (Answer 240). As the Mississippi Supreme Court noted in reviewing this claim, Petitioner does not have a constitutional right to be offered a plea bargain. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *Berry II*, 703 So.2d at 282. In light of the discretion afforded prosecutors and the lack of evidence of arbitrariness, Petitioner cannot sustain his burden of demonstrating the decision of the Mississippi Supreme Court was unreasonable in its application of law or determination of facts, or that it was contrary to established Supreme Court precedent. Petitioner is entitled to no relief on this claim.[31]

### Claim IX.  Unreliable and Irrelevant Evidence at Re-Sentencing[32]

Petitioner asserts it was error for the trial court to allow the admission of fifteen photographs of the victim's body and one video of the body and surrounding crime scene at the re-sentencing trial, as the evidence was duplicative, gruesome, and inflammatory. (Pet. ¶¶ 508-518).

Petitioner made a claim of error regarding the photographs in his direct appeal from the original trial, and the Mississippi Supreme Court determined the photographs were more probative than prejudicial. *Berry I*, 575 So.2d at 9-10. On direct appeal of Petitioner's re-sentencing trial, the court again affirmed the admissibility of the photographs, noting they were proof of the "heinous" aggravating circumstance. *Berry II*, 703 So.2d at 277-78. The court found that the video, while perhaps duplicitous, was not more gruesome than the photographs and provided the Union County jurors a "frame of reference as to the Chickasaw

---

[31] Petitioner also raised allegations of prosecutorial misconduct in his application for post-conviction relief. The Mississippi Supreme Court cited its prior decision on re-sentencing, noting the absence of reversible error and denying relief. *Berry IV*, 882 So.2d at 166.

[32] As previously noted, the Court has not viewed the evidence at issue.

County crime." *Id.* at 278. The Mississippi Supreme Court noted that use of these materials during the State's closing argument served only to inflame the jury; however, the court determined the conduct was not so prejudicial as to deny petitioner a fair trial, particularly given the "wide latitude" attorneys are afforded in closing arguments. *Id.*

The evidentiary rulings of a trial court are cognizable on federal habeas only if a specific constitutional right is impeded or if the rulings rendered the trial fundamentally unfair. *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994). Otherwise, evidentiary rulings are questions of state law not cognizable on federal habeas review. *See Lisenba*, 314 U.S. at 228-29, 62 S.Ct. at 286; *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999), *cert. denied*, 529 U.S. 1027, 120 S.Ct. 1437, 146 L.Ed.2d 326 (2000) (issue is whether error of evidentiary ruling "crucial, critical and highly significant" role in jury's determination that ultimately denied petitioner fair trial). A review of the record demonstrates that the photographs and exhibits were introduced to supplement Investigator Gore's testimony regarding what was observed at the crime scene. (Re-Sentencing Trial Tr. vol. 6, 377-78, 379-81, No. 93-DP-59, June 23, 1992). The remaining photographs complained of supplemented and clarified the testimony of Dr. Hicks regarding the autopsy findings. (Re-Sentencing Trial Tr. vol. 6 & 7, 446-460). Given that these photographs supplemented and clarified relevant testimony, it cannot be said that the decision of the Mississippi Supreme Court was contrary to or an unreasonable application of controlling precedent in the determination Petitioner was not denied a fundamentally fair trial by their introduction. Petitioner is entitled to no relief on this issue.

Turning now to the use of these materials in the prosecution's closing argument, this Court must determine whether Petitioner was denied a fundamentally fair trial by the prosecutor showing the photographs and portions of the video in closing argument. The Mississippi Supreme Court determined the

use of the photographs and video during closing argument could "have no other effect than to inflame and prejudice the jury." *Berry II*, 703 So.2d at 278. The question before this Court is not whether the prosecutor's conduct was deplorable, however, but whether Petitioner was denied a fundamentally fair trial. *See, e.g., Smith*, 455 U.S. at 219, 102 S.Ct. at 947 (noting the touchstone consideration is not whether prosecutor was culpable, but whether trial was fair). Here, there was significant evidence of Petitioner's guilt, and Petitioner does not suggest the prosecution manipulated the evidence or suggested facts not in evidence. The jury had substantial evidence on which to base its decision, and the jury was instructed that closing argument was not evidence. (*See* Instruction C.01, Re-Sentencing Trial Tr. vol. 2, 269-271). It was not unreasonable for the Mississippi Supreme Court to conclude Petitioner was not denied a fair trial by the introduction of this evidence. Petitioner is entitled to no relief on this issue.

## Claim X. Mental Illness

Petitioner raises a claim that Mississippi's post-conviction procedure was ineffective in protecting his rights in light of the United States Supreme Court decision *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), arguing that the evidence of his mental retardation that was presented to the Mississippi Supreme Court entitled him to an evidentiary hearing to determine whether he is eligible for the death penalty. (Pet. ¶527). Petitioner alleges he has stated a prima facie case of mental retardation as defined by the American Association of Mental Retardation ("AAMR") and endorsed by the United States Supreme Court. Petitioner offers support for his claim by directing by the Court to affidavits from his family members, hospital records, educational records, social history, and childhood Intelligence Quotient ("IQ") scores, all of which were attached to his petition for rehearing following the denial of post-conviction relief and are alleged to evidence an onset of mental retardation prior to Petitioner reaching

eighteen years of age.  (Pet. ¶¶519-524).[33]

In *Atkins*, the United States Supreme Court has held that it is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment to execute persons suffering from mental retardation. 536 U.S. at 321, 122 S.Ct. at 2252.  The Court expressly left it to the individual states to develop a procedure for establishing a claim of mental retardation to properly restrict the imposition of the death penalty.  *Id.* at  317, 2250.  In response to *Atkins*, the Mississippi Supreme Court set forth the procedure for establishing a claim of mental retardation in *Chase v. State*, 873 So.2d 1013 (2004).  The *Chase* court relied upon *Atkins* in its determination that a diagnosis of mental retardation requires the evaluation of both IQ and adaptive functioning.  *Id.* at 1021.[34]

Trial judges are to make determinations of mental retardation for Eighth Amendment purposes by a preponderance of the evidence presented by both the defendant and the state.  *Id.* at 1028.  The procedure for making such determinations is as follows:

---

[33] Petitioner relies upon the *Grayson* Memo for his argument.  (Pet. ¶530).  As previously noted, to the extent this argument relies on such, it is inadequately briefed and will not be considered in the Court's analysis.

[34]  The American Association on Mental Retardation ("AAMR") defines mental retardation as: (1) subaverage general intellectual functioning (*i.e.*, an IQ of approximately 70 or below) existing concurrently with (2) related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work; and (3) onset before the age of eighteen (18). AMERICAN ASSOCIATION ON MENTAL RETARDATION, MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 5 (9th ed. 1992).  The Diagnostic and Statistical Manual of Mental Disorders defines mental retardation as follows: The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A), that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety (Criterion B). The onset must occur before age 18 years (Criterion C).  American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed., text rev. 2000)("DSM-IV-TR").

> We hold that no defendant may be adjudged mentally retarded for purposes of the Eighth Amendment, unless such defendant produces, at a minimum, an expert who expresses an opinion, to a reasonable degree of certainty, that:
> 1. The defendant is mentally retarded, as that term is defined by the American Association on Mental Retardation and/or The American Psychiatric Association;
> 2. The defendant has completed the Minnesota Multi phasic Personality Inventory-II (MMPI-II) and/or other similar tests, and the defendant is not malingering.

*Id.* at 1029. The court also established that an evidentiary hearing on the issue of mental retardation may be had only when the defendant has filed a motion seeking a hearing and attaching to it an affidavit from a qualified expert, which is a "licensed psychologist or psychiatrist, qualified as an expert in the field of assessing mental retardation, and further qualified as an expert in the administration and interpretation of tests, and in the evaluation of persons, for purposes of determining mental retardation," who "opines, to a reasonable degree of certainty, that: (1) the defendant has a combined Intelligence Quotient ("IQ") of 75 or below, and; (2) in the opinion of the expert, there is a reasonable basis to believe that, upon further testing, the defendant will be found to be mentally retarded, as defined herein." *Id.*

Petitioner first raised the issue of whether he is entitled to an *Atkins* hearing in his application for post-conviction relief. The Mississippi Supreme Court noted Petitioner's mental capacity was raised and addressed during Petitioner's direct appeal from his re-sentencing trial, but it considered the claim on post-conviction review as *Atkins* had been decided in the interim. *Berry IV*, 882 So.2d at 175. The court determined Petitioner was not entitled to an *Atkins* hearing, as he failed to produce the evidence required by *Chase*, and the court further found the record evidence did not warrant a hearing. *Id.* at 176.[35] In reviewing the evidence Petitioner presented in support of his claim, which included the testimony and reports of

---

[35] As Petitioner's application for post-conviction relief was already pending at the time *Chase* was handed down, the failure of Petitioner to produce the requisite affidavit would not have prevented a hearing to make a mental retardation determination had the record contained a qualified opinion that Petitioner was mentally retarded. *See, e.g., Scott v. State*, 878 So.2d 933, 948 (Miss. 2004).

psychologists Dr. Charlton Stanley and Dr. Paul Blanton, the court found an evidentiary hearing was not required as both psychologists testified Petitioner was not mentally retarded. *Id.*

A careful review of the record fails to yield the support necessary to warrant an evidentiary hearing on Petitioner's claim of mental retardation. At the original trial, Dr. Stanley testified to Petitioner's "dull normal range" of intelligence, and in response to the inquiry of whether Petitioner was mentally retarded, Dr. Stanley replied, "[n]o sir, not even close." (Trial Tr. vol. 5, 588, lines 18-20, TR-89-DP-199, October 26, 1988 ). Later in the same line of questioning, Dr. Stanley stated that mental retardation was "not a factor in this case." (Trial Tr. vol. 5, 589, lines 6-10). At re-sentencing, Dr. Blanton also stated his opinion that Petitioner was not retarded. (Re-Sentencing Trial Tr. vol. 7, 485, June 24, 1992).

Dr. Stanley's September 28, 1988, report identifies Berry as having a full-scale IQ of 83 on the Wechsler Adult Intelligence Scale ("WAIS"). Dr. Blanton's October 28, 1988, report identifies a Wechsler Adult Intelligence Scale - Revised ("WAIS-R") score of 76. Attached to Petitioner's motion for rehearing following the denial of post-conviction relief is an affidavit from Dr. James Robert Flynn on the "Flynn Effect," which premises that norm IQ scores across a population will increase as the test upon which the scores depend ages. Dr. Flynn's August 8, 2004, affidavit opines Petitioner's true IQ is under 75 and that he meets the diagnostic criterion for mental retardation. Dr. Flynn offers support for his opinion by noting that the 1988 testings were only one month apart, yet Berry scored 83 on one and 76 on the other, due to the age of the respective tests.

The reports of Dr. Stanley and Dr. Blanton fail to satisfy the *Chase* standards for obtaining an evidentiary hearing, as the reports fail to indicate Petitioner has the requisite IQ. *See Chase*, 873 So.2d at 1029 n.20 ("defendants with an IQ of 76 or above do not qualify for Eighth Amendment protection"). Moreover, the affidavit from Dr. Flynn fails to meet the requirements of *Chase*, as Dr. Flynn is a political scientist - not a licensed psychiatrist or psychologist - as the standard requires. Petitioner has failed to

61

supplement his petition with the evidence necessary to warrant an evidentiary hearing on the issue of mental retardation. As *Atkins* left it to the individual states to develop procedures to ensure the death penalty was constitutionally restricted in regard to mentally retarded offenders, and he has failed to establish compliance with the Mississippi procedure, Petitioner has failed to establish he is entitled to relief on this claim.[36] The Court finds the Mississippi Supreme Court did not reach a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor was it unreasonable in its determination of facts with regard to Petitioner's claim.

## Claim XI. "Death Row Phenomenon"

Petitioner asserts his present incarceration and delay in carrying out his execution violates his Eighth Amendment right to be free from cruel and unusual punishment, relying heavily on citations to courts outside of the United States for the proposition that a lengthy delay renders execution inhumane and serves no penological purpose. (Pet. ¶¶ 532-543). This claim is raised for the first time on habeas review and is therefore barred. *See*, *e.g.*, *Gray*, 518 U.S. at 161-62, 116 S.Ct. 2080; *Coleman*, 501 U.S. at 732, 111 S.Ct. at 2555. Even if the procedural bar were not applicable, Petitioner fails to identify any applicable precedent which would entitle him to relief on this issue. *See Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11; *Lockyer v. Andrade*, 538 U.S. 65, 71, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003) ("clearly established" precedent of the United States Supreme Court refers to the holdings of the Court at "the time of the relevant

_____

[36] Petitioner filed numerous documents in support of his mental retardation claim and attached them to his application for state post-conviction relief. Among those filed documents were the report of Hope Stone, who prepared a social history; the report of Dr. Lewis Tetlow, a clinical psychologist, who documented Petitioner's diagnosis of paranoid schizophrenia; affidavits from friends and family members who allege Petitioner has always been "slow" and was enrolled in Special Education classes in school; as well as staff notes from the hospital at Parchman, wherein it is recorded that the staff believed Petitioner to be mentally retarded. (Records filed with post-conviction brief). These documents contain no information relevant to Petitioner's compliance with the procedure for raising an *Atkins* claim, and are as such omitted from the body of the discussion.

state-court decision.").  To hold otherwise would be to create a new rule of constitutional law in violation

of *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334, 356 (1989).  *See*, *e.g.*, *White

v. Johnson*, 79 F.3d 432, 437-438 (5th Cir. 1996); *Lackey v. Scott*, 28 F.3d 486, 492 (5th Cir. 1994).

Petitioner is entitled to no relief on this claim.

## Claim XII.  Cumulative Error

In his final claim for relief, Petitioner alleges the totality of the errors in his trial and re-sentencing

rendered proceedings against him unfair.  Habeas relief may be warranted when cumulative errors in the

trial court deny due process by failing "to observe that fundamental fairness essential to the very concept of

justice."  *Derden*, 978 F.2d at 1457 (*quoting Lisenba*, 314 U.S. at 236, 62 S.Ct. at 290); *Jackson*, 194 F.3d

at 655 n.59 (noting cumulative error may provide relief only when the errors violate fundamental fairness).

In *Derden v. McNeel*, the United States Court of Appeals for the Fifth Circuit held:

> Federal habeas corpus relief may only be granted for cumulative errors in the
> conduct of a state trial where (1) the individual errors involved matters of constitutional
> dimension rather than mere violations of state law; (2) the errors were not procedurally
> defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the
> resulting conviction violates due process.  978 F.2d at 1458 (*citing Cupp v. Naughten*, 414 U.S.
> 141,147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973).

The Mississippi Supreme Court was presented with Petitioner's cumulative error claim and held the

issue to be without merit.  *Berry IV*, 882 So.2d at 176.  As this Court has found no error or near error which

would warrant federal habeas corpus relief, it does not find the decision of the Mississippi Supreme Court

to be contrary to, or involving an unreasonable application of, established precedent on this issue.

Petitioner is entitled to no relief on this claim.

**Conclusion**

For the reasons stated above, the Court concludes Petitioner is not entitled to relief under 28 U.S.C. § 2254, and the instant petition shall be dismissed with prejudice. A separate order in accordance with this opinion shall issue today.

**THIS** the 4th day of October, 2006.

**/s/ Glen H. Davidson**
**CHIEF JUDGE**